STATE of Missouri, Respondent,

v.

Bobby DAVIS, Appellant.

No. WD 65572.

Missouri Court of Appeals, Western District.

April 27, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 2007.

Ronald E. Partee, Kansas City, for appellant.

Shaun J. Mackelprang, Jefferson City, for respondent.

Before HOLLIGER, SPINDEN and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Bobby Davis appeals from his conviction for first-degree assault. Davis contends he was prejudiced by the trial court's error in admitting evidence of uncharged crimes. We reverse and remand.

## Factual and Procedural History

On October 16, 2004, Bobby Davis and three companions went to an apartment to confront Tyrell Peterson about his involvement with Davis's cousin, Nakia. The confrontation ended when Davis told Peterson he did not want to fight because "this stuff is petty." Michael Thomas, a friend of Peterson, then announced that Davis and his companions needed to leave. In response, one of Davis's companions, Sergio Wyatt, prepared to fight Thomas. Davis stepped in between the men. He pushed Wyatt back and said, "You can't whup him." Davis then said, "Just do it," began laughing, and took off running. At that point, Wyatt pulled a gun from his waistband and began firing. The gunshots wounded Thomas and two other persons outside Peterson's apartment.

Davis was charged with first-degree assault, Section 565.050,[1] for acting in concert with the shooter. At the jury trial, the court overruled Davis's objection to the State's evidence concerning an incident that occurred two days prior to the shooting. Peterson, as the State's witness, was allowed to testify that Davis came to his apartment on October 14, 2004, to question Peterson about his involvement with Nakia. When Peterson tried to walk away, Davis attempted to hit Peterson with his car, forcing Peterson to jump out of the way. Peterson testified that the car brushed against his foot.

The jury found Davis guilty of first-degree assault, and the court sentenced him to an eleven-year prison term. On appeal, Davis challenges the admission of Peterson's testimony concerning the incident that occurred two days to the shooting.

### STANDARD OF REVIEW

The trial court is vested with broad discretion in determining the admissibility of evidence; we will not disturb its ruling absent a clear abuse of that discretion. *State v. Blakey,* 203 S.W.3d 806, 811 (Mo. App.2006). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.*

"To warrant reversal, improperly admitted evidence must have resulted in prejudice to the defendant." *Id.* at 814. We will reverse only if the erroneous admission of evidence was so prejudicial that it deprived the defendant of a fair trial. *Id.*

---

1. All statutory citations are to the Revised Missouri Statutes 2000, unless otherwise indicated.

ANALYSIS

A defendant has the right to be tried only on the offense for which he is charged. *State v. Barriner*, 34 S.W.3d 139, 144 (Mo. banc 2000). "As a general rule, evidence of uncharged misconduct is inadmissible for the purpose of showing the propensity to commit such crimes." *Id.*[2] However, such evidence of prior misconduct may be admissible if it is logically relevant, in that it has some legitimate tendency to directly establish the defendant's guilt of the charged offense. *Blakey*, 203 S.W.3d at 811. The evidence also must be legally relevant, in that its probative value must outweigh its prejudicial effect. *Id.*

More specifically, evidence of prior uncharged misconduct is admissible only when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime on trial. *State v. Berwald*, 186 S.W.3d 349, 358 (Mo.App.2005). An additional exception is recognized for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged, or the "*res gestae*." *Blakey*, 203 S.W.3d at 812. This evidence is admissible to present a complete and coherent picture of the criminal events that transpired. *Id.*

A tension necessarily exists between excluding evidence of uncharged crimes and admitting evidence to show the complete and coherent picture of the crime at issue. *State v. Morrow*, 968 S.W.2d 100,

108 (Mo. banc 1998). Consideration of such evidence requires a "balancing of the effect and value" of the evidence and "rests within the sound discretion of the trial court." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). The court must take special care in striking this balance, especially when the evidence of the uncharged crimes is remote in time or nature from the crime at issue. *Morrow*, 968 S.W.2d at 108–09. Such evidence could raise a "legally spurious presumption of guilt in the minds of the jurors." *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992).

Here, the State asserts that the evidence regarding Davis's attempt to strike Peterson with his car two days before the shooting was admissible because it presented a complete and coherent picture of the events that transpired and, thus, was part of the *res gestae*. The State argues that the evidence helped provide context to the events that led up to the shooting in that Davis's appearance at Peterson's apartment on the night of the shooting was a continuation of the previous dispute. The State also asserts that Davis was not prejudiced by the admission of this evidence because there was other testimony at trial regarding the prior incident.

Generally, acts, statements, occurrences and the circumstances forming part of the main transaction may be shown in evidence under the *res gestae* rule where they precede the offense immediately or by a short interval of time and tend,

---

2. Evidence of uncharged crimes carries several significant risks, including: (1) the information about other crimes could mislead or confuse the jury, (2) the jury may give undue weight to the "if he did it once, he'll do it again" inference, (3) the defendant will be compelled to defend, not just against the charges brought, but against any prior, similar behavior that the State did not prosecute; and (4) the jury, in its rush to punish the defendant for his past acts—which the jury must infer have gone unpunished-may overlook the fact that the State has failed to prove the defendant was guilty of the charged offense. *State v. Bernard*, 849 S.W.2d 10, 22 (Mo. banc 1993).

as background information, to elucidate a main fact in issue. *State v. Sherman*, 637 S.W.2d 704, 706 (Mo.1982). The term *"res gestae"* includes "[t]hings done, or ... the facts of the transaction; ... the surrounding facts of a transaction explanatory of an act or showing a motive for acting; ... matters incidental to a main fact and explanatory of it, including acts and words which are so closely connected with a main fact as will constitute a part of it, and without a knowledge of which the main fact might not be properly understood." *Id.* (quoting *State v. Jones*, 256 S.W. 787, 791 (Mo.1923)).

The central issue on appeal is whether the testimony regarding Davis's attempt to strike Peterson with his car was a part of the *res gestae* of the crime of encouraging Wyatt to shoot the three victims. We conclude that evidence of the prior incident was not necessary to prove or understand the facts surrounding the shooting. In the first incident, Davis tried to hit Peterson with a vehicle after they had argued about Peterson's involvement with Davis's cousin. Two days later, Davis returned to Peterson's apartment but stated that he did not intend to fight Peterson. Davis's friend, Sergio Wyatt, got angry when Michael Thomas told them they needed to leave Peterson's apartment. Davis stepped between Wyatt and Thomas to prevent a fight, but ultimately Davis stepped away and encouraged Wyatt to begin shooting. Davis's previous desire to injure Peterson had no apparent bearing on his motivation to encourage Wyatt to shoot and injure Thomas and the others. Davis's prior interaction with Peterson was not "so closely connected" with his actions on the night of the shooting as to "constitute a part of it" and, therefore, was not admissible under the *res gestae* exception. *See Jones*, 256 S.W. at 791.

"In criminal cases involving the improper admission of evidence, the test for prejudice is whether the improper admission was outcome-determinative." *Blakey*, 203 S.W.3d at 814 (internal citations omitted). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001).

■ As noted, Peterson's testimony regarding the prior incident was not factually necessary or relevant to establish that Davis encouraged Wyatt to shoot Thomas and others. The primary effect of the testimony was to the impugn Davis's character, by making it seem more likely that he had a reckless and violent temperament. The testimony was more prejudicial than probative because it only served to inflame the jury regarding Davis's propensity for violence. *See State v. Olson*, 854 S.W.2d 14, 16 (Mo.App.1993). There is a reasonable probability that without the improperly admitted evidence, the jury would have acquitted Davis.

The State argues that Davis was not prejudiced by the admission of Peterson's testimony because another witness, Allan Newberry, testified about the prior incident without objection from defense counsel. The State asserts Peterson's testimony was cumulative to Newberry's and, thus, did not affect the jury's verdict. We note, however, that Peterson testified at trial prior to Newberry. The defense objections to Peterson's testimony were overruled, giving defense counsel reason to believe that future objections to the same testimony would not be sustained. It is reasonable to assume defense counsel

would have objected to Newberry's testimony if Peterson's earlier testimony had been excluded. Once Peterson's testimony was improperly admitted, Newberry's *subsequent* testimony was cumulative and did not cause the prejudice of which Davis complains.

## CONCLUSION

Davis was prejudiced by the trial court's improper admission of evidence concerning uncharged crimes. The judgment of conviction is reversed, and the cause is remanded for a new trial.

Judge RONALD R. HOLLIGER concurs.

Judge PAUL M. SPINDEN dissents in separate opinion.

PAUL M. SPINDEN, Judge, dissenting.

The circuit court did not abuse its discretion in admitting Tyrell Peterson's testimony that Bobby Davis tried to hit him with a car just two days before the shooting. The evidence was admissible because it helped construct a complete and coherent picture of the assault by establishing the context for that offense. It had a legitimate tendency to establish his guilt, and its probative value did not outweigh its potential prejudice. Moreover, Davis' previous desire to injure Peterson bore directly on his motivation to encourage the shooting.

Two days before the shooting occurred, Davis confronted Peterson at Peterson's apartment concerning Peterson's involvement with Davis' cousin. Peterson testified that Davis was angry and wanted to fight. After ordering Peterson not to "mess" with his cousin, Davis threatened to return to show him what would happen if he did not leave his cousin alone. Davis then returned to his car. Davis did not object to any of this testimony.

Davis objected only when he thought the state was going to ask Peterson whether or not Davis tried to run Peterson over with his car. Davis objected on the grounds that it was "a prior bad act and not germane." The circuit court overruled Davis' objection. Peterson testified that, as Davis drove his car away from Peterson's apartment, Davis "pushed on the gas and tried to hit him." Peterson said that the car "kind of" hit his foot when he jumped out of the way and that Davis had to have seen him.

Two days after the car incident, on Saturday morning, Peterson saw Davis driving slowly past his apartment. Later that evening, Davis, along with his cousin's brother, Sergio Wyatt, went to Peterson's apartment looking for Peterson. Peterson was not there, but, according to Peterson's roommate, he could tell by Davis' tone that Davis was "hot" and that he was not there to "shake hands" with anyone. Davis and Wyatt left the apartment, and Peterson's roommate telephoned Peterson to tell him to come home because Davis and Wyatt were "looking for problems."

Later that evening, Davis, Wyatt, and two other companions returned to Peterson's apartment to confront Peterson about his involvement with Davis' cousin. The confrontation ended when Davis told Peterson that he did not want to fight because "this stuff is petty." When one of Peterson's friends told Davis and his companions to leave, Wyatt prepared to fight with Peterson's friend. Davis stepped in between the men, pushed Wyatt back, and told him, "You can't 'whup' him." Davis then said, "Just do it," and he began laughing and took off running. Wyatt pulled a gun from his waistband, began firing, and wounded three people.

The circuit court has broad discretion in determining the admissibility of evidence, and we should reverse the circuit court's

determination only when it clearly abuses its discretion. *State v. Johnson,* 207 S.W.3d 24, 42 (Mo. banc 2006), *petition for cert. filed,* No. 06–10222 (U.S. Mar. 19, 2007). "Generally, evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the defendant's propensity to commit such crimes." *Id.* If, however, evidence of uncharged misconduct is "logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and legally relevant, in that its probative value outweighs its prejudicial effect," it may be admissible. *Id.* "Evidence of prior uncharged misconduct generally has a legitimate tendency to prove the specific crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime on trial." *State v. Barriner,* 34 S.W.3d 139, 145 (Mo. banc 2000). Moreover, "[a]n exception to the general rule that evidence of uncharged misconduct is inadmissible 'is recognized for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged.'" *Johnson,* 207 S.W.3d at 42 (quoting *State v. Morrow,* 968 S.W.2d 100, 107 (Mo. banc), *cert. denied,* 525 U.S. 896, 119 S.Ct. 222, 142 L.Ed.2d 182 (1998)). Evidence of uncharged crimes is admissible to present a complete and coherent picture of the charged crimes. *Morrow,* 968 S.W.2d at 107.

The evidence concerning Davis' attempt to hit Peterson with his car just two days before the shooting was interconnected with the shooting, and it set the context for the events leading up to the shooting. *See State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The level of Davis' anger toward Peterson was made more clear when, in addition to threatening Peterson, Davis attempted to hit Peterson with his car. Two days later, Davis confronted Peterson again about his involvement with his cousin. Wyatt's shooting of the three victims was just a continuation of the dispute between Davis and Peterson concerning Peterson's involvement with Davis' cousin. The evidence surrounding the car incident merely added to the complete and coherent picture of the shooting; therefore, the circuit court did not err in admitting it.

Contrary to the majority's conclusion, Davis' previous desire to injure Peterson bore directly on his motivation to encourage the shooting, and Davis' prior interaction with Peterson was "closely connected" with his actions on the night of the shooting so as to constitute a part of it. *See Johnson,* 207 S.W.3d at 42 (testimony of six-year-old victim's friend that defendant had stalked her and the victim two days before victim's murder was admissible as prior bad act evidence).

Seeing no merit in Davis' remaining contentions on appeal, I would, therefore, affirm the circuit court's judgment convicting Davis of assault in the first degree.