

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,                    )
                                      )
            Respondent,               )    WD81227
                                      )
v.                                    )    OPINION FILED:
                                      )    February 13, 2019
RAY JAMES JUNIEL,                     )
                                      )
            Appellant.                )

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Jodi C. Asel, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Victor C. Howard, Judge and
Thomas H. Newton, Judge

Ray James Juniel ("Juniel") appeals his convictions after a jury trial of statutory rape in the first degree, statutory sodomy in the first degree, and endangering the welfare of a child in the first degree.  Juniel contends that the trial court erred in overruling his motion to dismiss based on a violation of his right to a speedy trial under article I, sections 10 and 18(a) of the Missouri Constitution, and the Sixth and Fourteenth amendments to the United States Constitution.  Finding no error, we affirm.

## Factual and Procedural History

On May 15, 2015, Juniel was charged by indictment with statutory rape in the first degree, statutory sodomy in the first degree, and endangering the welfare of a child, in connection with events that occurred between 2011 and 2015.

Juniel filed a motion for change of judge on June 18, 2015, which was granted on June 22, 2015. On June 24, 2015, the State filed its own motion for change of judge, and the case was reassigned the following day. As a result of the change of judge motions, the initial trial date of August 4, 2015 was reset to October 28, 2015.

On August 27, 2015, the State filed a notice of intent to admit out-of-court statements pursuant to section 491.075,[1] which required the trial court to conduct a hearing to determine the admissibility of the statements ("491 hearing"). The State concurrently filed a motion to compel Juniel to provide a DNA sample. A hearing on the motion to compel a DNA sample was scheduled for September 9, 2015, but was continued to September 21, 2015 when defense counsel failed to appear. The motion to compel was sustained on September 21, 2015.

Juniel filed a motion to continue the October 28, 2015 trial setting because DNA test results were still pending, and because the 491 hearing had not yet been conducted. Juniel's motion for continuance was granted on October 19, 2015. The case was

---

[1]All statutory references are to RSMo current through the date of Juniel's indictment on May 15, 2015, unless otherwise noted. Juniel's victim was a child under the age of fourteen. Section 491.075 permits the admission of out-of-court statements by a victim of certain enumerated crimes if the court finds the statements provide sufficient indicia of reliability, and if other requirements specified in the statute are met.

rescheduled for trial on January 26, 2016. A 491 hearing was scheduled for January 8, 2016.

As the date for the 491 hearing approached, the State filed a motion to continue the 491 hearing due to witness unavailability, and a corresponding motion to continue the trial setting. Juniel consented to both motions. Trial was rescheduled for March 16, 2016.

On March 4, 2016, Juniel filed a motion to continue the March 16, 2016 trial setting because the 491 hearing still had not been conducted. Juniel's motion was granted, and the trial was rescheduled to June 14, 2016. The 491 hearing was scheduled for May 27, 2016, but was continued to August 11, 2016, due once again to witness unavailability. That required yet another continuance of the trial setting to September 13, 2016.

In the meantime, Juniel's trial counsel withdrew on July 11, 2016. New trial counsel entered an appearance for Juniel on July 13, 2106. On August 3, 2016, Juniel's new trial counsel filed a motion to continue the September 13, 2016 trial date. Juniel's motion was granted, and the trial was rescheduled to January 4, 2017, with the 491 hearing scheduled the same day. That trial date was cancelled when the 491 hearing had to be rescheduled to January 13, 2017. The January 13, 2017 491 hearing was then cancelled by the trial court when the threat of inclement weather caused the courthouse to be closed. The 491 hearing was rescheduled to February 24, 2017.

On January 19, 2017, Juniel filed a request for a speedy trial. Two days later, the court set a trial date of April 4, 2017. The 491 hearing was conducted on February 24, 2017. The court ruled the victim's out-of-court statements admissible on March 2, 2017.

On March 16, 2017, the State made an oral motion to continue the April 4, 2017 trial date due to an attorney conflict. The State's motion was granted, and trial was rescheduled for June 13, 2017. Juniel did not object to this continuance.

On June 5, 2017, the parties appeared before the trial court for a guilty plea hearing, as Juniel had given notice that he wished to enter a guilty plea. The trial court refused to accept the guilty plea because Juniel refused to admit that he committed the charged acts, and therefore, refused to admit a sufficient factual basis for the plea.

The trial court asked the State if it was prepared to proceed to trial on June 13, 2017. The State advised that because it had expected Juniel to plead guilty, it would not be prepared for trial on June 13, 2017. The trial court advised that if the State did not proceed to trial as scheduled, the case would be dismissed for failure to prosecute, as Juniel had been in jail for two and a half years. The State asked the trial court to instead set the matter for pretrial the following week. Juniel's counsel agreed with this request. The case was set for pretrial on June 12, 2017.

On June 8, 2017, Juniel filed a motion to dismiss for failure to prosecute. On June 9, 2017, the State dismissed the case against Juniel *nolle prosequi*.[2] Juniel was re-indicted on the same charges on June 16, 2017, and the case was set for trial on September 26, 2017.

---

[2]"'A *nolle prosequi* is a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending criminal charge.'" *State v. Sisco*, 458 S.W.3d 304, 310 (Mo. banc 2015) (quoting *State v. Clinch*, 335 S.W.3d 579, 583 (Mo. App. W.D. 2011)). "This discretion has been codified in section 56.087, which provides that the prosecutor 'has the power, in his or her discretion, to dismiss a complaint, information, or indictment, or any count or count thereof['] without the consent of the court." *Id*. (quoting section 56.087.1). "A dismissal filed by the prosecuting attorney . . . prior to the time double jeopardy has attached is without prejudice." Section 56.087.2. If the dismissal is without prejudice, that "the prosecutor 'has complete discretion to refile the case, as long as it is refiled within the time specified by the applicable statute of limitations.'" (quoting section 56.087.3)

4

Juniel filed a motion to dismiss the charges for failure to prosecute based on an alleged speedy trial violation. The motion to dismiss was denied by the trial court after oral argument during a September 22, 2017 pre-trial hearing.

Trial commenced on September 26, 2017, and the jury convicted Juniel on all counts. The trial court entered a judgment of conviction and sentence on November 8, 2017 ("Judgment").

Juniel filed this timely appeal.

**Analysis**

Juniel asserts a single point on appeal. Juniel argues that the trial court "abused its discretion" in overruling his motion to dismiss and in entering Judgment against him because his rights to due process of law and a speedy trial under article I, sections 10 and 18(a) of the Missouri Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution, were violated[3] as he was not tried until 866 days after his initial indictment, and 250 days after he formally requested a speedy trial.

Juniel's point relied on misstates our standard of review. Although we review the trial court's factual findings and credibility determinations deferentially for an abuse of discretion, we review whether a constitutional right has been violated, a question of law, *de novo*. *State v. Sisco*, 458 S.W.3d 304, 312-313 (Mo. banc 2015).[4] We therefore review

---

[3]The constitutional right to a speedy trial is also codified in section 545.780.

[4]*Sisco* acknowledged that prior cases have held that the standard of review of a trial court's ruling on a motion to dismiss alleging a speedy trial violation is for an abuse of discretion, but ultimately found that as with other constitutional rights, determining whether there has been a speedy trial violation is an issue of law entitled to *de novo* review. 458 S.W.3d at 312-13.

the trial court's decision to deny Juniel's motion to dismiss based on an alleged speedy trial violation *de novo*.

"The right to a speedy trial is provided by the Sixth Amendment of the United States Constitution and article I, section 18(a) of the Missouri Constitution." *Id.* at 313 (citing *State v. Taylor*, 298 S.W.3d 482, 504 (Mo. banc 2009)). "The federal and Missouri constitutions 'provide equivalent protection for a defendant's right to a speedy trial.'" *Id.* (quoting *Taylor*, 298 S.W.3d at 504). "[T]he protections of the speedy trial provisions attach when there is a 'formal indictment or information' or when 'actual restraints [are] imposed by arrest and holding to answer a criminal charge.'" *State ex. rel Garcia v. Goldman*, 316 S.W.3d 907, 911 (Mo. banc 2010) (quoting *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (other citation omitted)).

"Determining whether a defendant's right to a speedy trial has been violated requires a balancing of four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay." *Sisco*, 458 S.W.3d at 313 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "The existence of any one of these factors is neither necessary nor sufficient to finding a deprivation of the right to a speedy trial." *Id.* (citing *Barker*, 407 U.S. at 533). "Rather, 'courts must . . . engage in a difficult and sensitive balancing process.'" *Id.* (citing *Barker*, 407 U.S. at 533).

### Length of the Delay

The first factor, the length of the delay, "is a triggering mechanism because, '[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry

6

into the other factors.'" *Id.* (quoting *Barker*, 407 U.S. at 530). "Missouri courts have found a delay of greater than eight months is 'presumptively prejudicial.'" *Id.* (quoting *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 729 (Mo. banc 2007)).

Juniel was first indicted on May 15, 2015. Juniel was not tried until September 26, 2017. This 28 month delay is presumptively prejudicial. We are therefore required to consider the remaining factors to determine whether "a delay extending [28] months beyond the presumptively prejudicial threshold violated [Juniel's] right to a speedy trial in light of other factors." *Id.*

### *Reason for Delay*

In analyzing this factor, we assign different weights based on the reason for the delay. *Id.* "The United States Supreme Court has provided guidance on how to weigh different reasons for a delay:

> 'A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.'"

*Id.* at 314 (quoting *Barker*, 407 U.S. at 531); *see also State ex rel. Garcia*, 316 S.W.3d at 911 ("A deliberate attempt by the state to delay the trial is weighted heavily against the government, while '[a] more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered.'") (quoting *Barker*, 407 U.S. at 531). "On the other hand, '[d]elays attributable to the defendant weigh heavily against the defendant.'"

*Id.* (quoting *State v. Greenlee*, 327 S.W.3d 602, 612 (Mo. App. E.D. 2010) (internal quotations omitted)).

Juniel's case was first set for trial on August 4, 2015, less than 3 months after his indictment. Motions for change of judge filed by Juniel and then by the State required the trial to be rescheduled to October 28, 2015, 5 months after Juniel's indictment, and well below the presumptively prejudicial threshold.

The State's August 27, 2015 notice of intent to admit the victim's out-of-court statements pursuant to section 491.075, and motion to compel a DNA sample from Juniel, caused Juniel to move to continue the October 28, 2015 trial setting. The trial was continued to January 26, 2016, 10 days beyond the presumptively prejudicial threshold of 8 months. Although this continuance was sought by Juniel, it was necessitated by the fact the required 491 hearing had yet to be conducted, and DNA results were still pending. This weighs against the State, though not heavily. *Id.* at 315 (holding that delay "resulting from the state's performance of DNA analysis is weighed against the state but not heavily," and that "delay caused by uncooperative witnesses is weighed against the state only slightly").

The January 26, 2016 trial setting was then continued on four occasions to March 16, 2016, June 14, 2016, September 13, 2016, and January 4, 2017. The first, second and third continuances were requested by either the State or Juniel because the required 491 hearing had to be conducted due to witness unavailability. These delays, which total nearly 8 months, are attributable to the State, but are weighed only slightly. *Id.*; *see also Barker*, 407 U.S. at 531 (holding that delays occasioned by witness unavailability should be viewed as "appropriate," and afforded little if any weight). The

8

fourth continuance was requested by Juniel because of his change in counsel. The delay between the September 13, 2016 trial setting and the January 4, 2017 trial setting, a period of nearly 4 months, is attributable to, and weighs heavily against, Juniel. *Id.* ("[D]elays attributable to the defendant weigh heavily against the defendant.") (quotation omitted).

Rescheduling of the 491 hearing from January 4, 2017 to January 13, 2017 necessarily resulted in cancellation of the January 4, 2017 trial date. The reason the 491 hearing was rescheduled is not explained in the record. The rescheduled January 13, 2017 491 hearing was then cancelled by the trial court and rescheduled to February 24, 2017 due to an impending snowstorm that closed the courthouse. On January 19, 2017, Juniel filed his request for a speedy trial, which led the trial court to set trial for April 4, 2017. The 3 month delay between the January 4, 2017 trial date and the April 4, 2017 trial date, even if attributable solely to the State, weighed only slightly if at all against the State, as the required 491 hearing was first rescheduled for a reason not disclosed in the record, and was then rescheduled due to the weather--a matter over which the State had no control.

The April 4, 2017 trial date was rescheduled to June 13, 2017 at the State's request because of trial counsel's conflict--a delay of just over 2 months that is attributable to the State. However, there was no evidence to suggest that the State's request for a continuance was disingenuous, or a deliberate attempt to delay the trial. Thus, this delay is only somewhat heavily weighted against the State. *State ex rel. Garcia,* 316 S.W.3d at 911 (quoting *Barker*, 407 U.S. at 531) ("A deliberate attempt by the state to delay the trial is weighted heavily against the government, while '[a] more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered.'").

9

On June 5, 2017, Juniel appeared in court for a scheduled guilty plea hearing. However, Juniel would not admit to the factual basis for a guilty plea, requiring the trial court to refuse to accept the plea. When the trial court then asked the State if it was prepared to proceed to trial as scheduled on June 13, 2017, the State advised it was not, largely because it had relied on Juniel's intent to plead guilty. The trial court advised that it would dismiss the charges against Juniel if the case did not proceed to trial as scheduled, as Juniel had, by that time, been in jail for two and a half years. At the State's request, and with Juniel's counsel's consent, the case was set for a pretrial conference on June 12, 2017.

On June 9, 2017, the State dismissed the charges against Juniel *nolle prosequi*, then re-indicted Juniel on the same charges on June 16, 2017. Juniel's case was tried on September 26, 2017. The delay of just over 3 months between the June 13, 2017 trial date and the September 26, 2017 trial date was attributable to the State, and is to be weighed heavily against the State. *Sisco*, 458 S.W.3d at 315 (noting that dismissal of charges and refiling of same to avoid an adverse ruling "must be weighed heavily against the state"). However, there is no evidence to support the conclusion that the State "'intentionally [held] back in its prosecution [of Juniel] . . . to gain some *impermissible* advantage at trial' because [the] state had authority to dismiss and refile the case to avoid an unfavorable ruling."[5] *Id*. at 315-16 (quoting *Doggett v. U.S.*, 505 U.S. 647, 656 (1992)).

On balance, of the 866 days (just over 28 months) between Juniel's initial indictment and his trial on September 26, 2017, the majority of the delay (approximately 19 months)

---

[5]*See* section 56.087.

10

is attributable to the State but not heavily weighted against the State; approximately 5 months of the delay is attributable to the State and heavily weighted or somewhat heavily weighted against the State; and approximately 4 months of the delay is attributable to Juniel and is heavily weighted against Juniel.

### *Assertion of the Right to a Speedy Trial*

There is no prescribed time frame within which a defendant must assert the right to a speedy trial. *Id.* at 316. "Instead, courts will weigh the timeliness of the assertion and the frequency and force of a defendant's objections." *Id*. (citing *Barker*, 407 U.S. at 529).

Juniel was indicted on May 15, 2015, but did not file a request for a speedy trial until January 19, 2017. Before the speedy trial request was filed, both parties filed motions for continuances, and multiple trial dates were set and agreed to by Juniel. After the speedy trial request was filed, Juniel moved to dismiss his case after his guilty plea was not accepted and the State was advised by the trial court that the case would be dismissed if trial did not proceed as scheduled on June 13, 2017. When the State dismissed then refiled charges against Juniel in June 2017, Juniel immediately moved to dismiss the charges based on his right to a speedy trial. He renewed this request during trial and in his motion for new trial.

Juniel's assertion of the right to a speedy trial 20 months after he was indicted, and after his case had been set for trial on multiple occasions by agreement, attenuates delays otherwise chargeable to the State in bringing Juniel to trial. *State v. Davis*, 903 S.W.2d 930 937 (Mo. App. W.D. 1995) (holding that delays chargeable to the state are attenuated by a defendant's delay in asserting the right to a speedy trial); *State v. Bohannon,* 793

11

S.W.2d 497, 504 (Mo. App. S.D. 1990) (holding that delays chargeable to the state are "attenuated by appellant's delay in asserting his right to a speedy trial"). However, once the right to a speedy trial was asserted by Juniel, his actions in the case were consistent with his assertion of that right. "Though [Juniel] waited almost two years, he asserted his right to a speedy trial several times, which weighs in favor of finding a violation of that right." *Sisco*, 458 S.W.3d at 317.

***Prejudice Experienced from the Delay***

The final *Barker* factor is whether an accused was prejudiced by the delay. "Generally, prejudice must be 'actual prejudice apparent on the record or by reasonable inference--not speculative or possible prejudice.'" *State ex rel. Garcia*, 316 S.W.3d at 912 (quoting *State v. Edwards*, 750 S.W.2d 438, 442 (Mo. banc 1988)). The determination of "presumptively prejudicial delay" in connection with the first *Barker* factor operates ***solely*** to trigger judicial review of the other *Barker* factors. *Sisco*, 458 S.W.3d at 318. "Determining a delay is long enough to trigger consideration of other factors does not negate the need for this Court to consider actual prejudice." *Id*.

"There are three considerations in determining whether a delay has prejudiced the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired." *State ex rel. Garcia*, 316 S.W.3d at 912.

**(1)  Oppressive Pretrial Incarceration**

Juniel was incarcerated the entire time between his indictment and trial. Incarceration awaiting trial is actual prejudice. *Sisco*, 458 S.W.3d. at 317. However, actual

prejudice resulting from pre-trial incarceration may be outweighed by a lack of impairment to the defense. *State v. Nelson*, 719 S.W.2d 13, 19 (Mo. App. W.D. 1986).

### (2) Anxiety and Concern of the Accused

"'[A]nxiety and concern exist in every criminal case, but that alone does not establish prejudice where, as here, the defendant neither asserts or shows that the delay weighed particularly heavily on him in specific instances.'" *Sisco*, 458 S.W.3d. at 317 (citation omitted). Juniel's bare allegation that he experienced anxiety and concern as a result of delay do not establish actual prejudice.

### (3) Impairment of the Defense

Juniel presents no evidence or argument that his defense was impaired by the delay of his trial and concedes that he "he does not have a wealth of specific evidence that shows impairment to his defense as a result of the delay." [Appellant's Brief, p. 20]. Juniel "does not identify any witnesses who disappeared or otherwise became unavailable because of the delay, nor does he allege that any evidence was lost." *Sisco*, 458 S.W.3d at 317. Instead, Juniel argues that he is not required to demonstrate actual impairment of his defense, because we should conclude that a delay of 866 days "negatively impacted the reliability of [his] trial in ways that are impossible to identify." [Appellant's Brief, p. 21]

It is true that "the presumption of prejudice 'intensifies over time,' and its importance among the other factors increases with the length of the delay." *Id*. at 318 (quoting *Doggett*, 505 U.S. at 652). It is thus possible, where delay attributable to the State is particularly excessive, and is of a nature that it "'presumptively comprises the reliability of trial in ways that neither party can prove or, for that matter, identify,'" that "'affirmative proof of

13

particularized prejudice is not essential.'" *Id*. (quoting *State ex rel. Garcia*, 316 S.W.3d at 913, itself quoting *Doggett*, 505 U.S. at 655). This type of delay has most frequently been found to occur when there is a "lengthy delay between the indictment and arrest, a time period during which delay is particularly likely to result in prejudice that an accused may be unable to prove or identify because the accused may be unaware of the charges." *Id*. (citing *Doggett*, 505 U.S. at 652; *Garcia*, 316 S.W.3d at 914).

Here, the 866 day (approximately 28 month) delay between Juniel's indictment and trial, did *not* involve delay between Juniel's indictment and arrest, and "did not rise to the same level of seriousness as the delays" in *Doggett* (an eight and one-half year delay between indictment and arrest) and *Garcia* (a seven-year delay between indictment and arrest). *Id*. Juniel did not, therefore, experience extraordinary or excessive delay of a nature that presumptively comprised the reliability of his trial in ways that neither party could prove as to relieve him of the burden to present particularized proof that his defense was impaired by the delay. *Id*. Juniel concedes he cannot sustain that burden, causing this factor to be weighed in favor of the State.

We conclude that the presumption of prejudice attached to the length of delay, which triggered our obligation to review the remaining *Barker* factors, was attenuated by Juniel's actions and/or by Juniel's acquiescence in the delays up to the point where he requested a speedy trial 20 months after his indictment. We acknowledge that "the state's use of a *nolle prosequi* to avoid an adverse ruling" that would have dismissed the case for failure to prosecute "is concerning." *Id*. However, "the delay caused by the *nolle prosequi* that weighed heavily against the state" was just over 3 months. *Id*. at 319. "Most of the

14

[28 month] delay was caused by neutral reasons, and [Juniel] waited 20 months to assert his right to a speedy trial. Moreover, the actual prejudice [Juniel] suffered by the delay was minimal. When balancing all of the factors, the presumption of prejudice in this case is outweighed." *Id.* (finding no speedy trial violation where delay between indictment and trial was three years).

Juniel's right to a speedy trial was not violated.

## Conclusion

The trial court's Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur