

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112330 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | Cause No. 2222-CR00557-01 |
| | ) | |
| STEPHEN WILEY, | ) | Honorable Christopher E. McGraugh |
| | ) | |
| Appellant. | ) | FILED: May 27, 2025 |

Opinion

Stephen Wiley (Wiley) appeals from the trial court's judgment following a jury trial convicting him on assault in the first degree, armed criminal action, and domestic assault in the third degree for conduct committed against two victims, A.H. and Victim. Wiley raises three points on appeal. Point One asserts the trial court erred in overruling his motion to dismiss the indictment for violating his right to a speedy trial. Points Two and Three bring evidentiary challenges. Specifically, Point Two argues the trial court plainly erred in admitting evidence of domestic assault because the State failed to establish that Wiley and Victim were in a domestic situation. Point Three contends the trial court abused its discretion in admitting evidence that Victim obtained an order of protection against Wiley because it was improper propensity evidence. Although a delay of 590 days was presumptively prejudicial, the trial court did not err in denying Wiley's speedy-trial motion because he contributed to or acquiesced to multiple

continuances and demonstrated no substantial impairment to his defense. We deny Point One.

We next review Point Three, because it was preserved for review, and deny the point because the

single, isolated mention of an order of protection did not prejudice the outcome of Wiley's trial.

Finally, we deny Point Two because Wiley demonstrates no facially substantial grounds for

manifest injustice to justify plain-error review. Accordingly, we affirm the trial court's

judgment.

Background

In the light most favorable to the verdict,[1] the following evidence was adduced at trial:

On April 14, 2022, A.H. was visiting his girlfriend, Victim, at her home. A.H. was

dropping Victim's daughter off at the school bus stop when Wiley walked by wearing a hood

over his head and a mask partially covering his face. A.H. recognized Wiley, whom he had met

when Wiley came to Victim's home "want[ing] to see his kids or something like that."

A.H. returned to Victim's home and saw Wiley walking out from beside Victim's home

and then up the street. When Wiley got within twenty feet of A.H., he turned around and said

something to him, then took out a gun and fired a single shot that struck A.H. in the abdomen.

A.H. retreated to the house, where he collapsed on the porch. Wiley followed him. Wiley

attempted to shoot him a second time, but the gun malfunctioned and did not fire.

Victim opened the front door and pulled A.H. inside, then shut the door behind them.

Wiley kicked the door twice, breaking part of the frame and making the door to "fl[y] off the

hinges." Wiley entered the house and hit Victim in the face with the gun. Victim pleaded with

Wiley not to shoot her or their young son, whom she was holding protectively in her arms.

Wiley eventually left. Neighbor witnessed the shooting and called 911. Police used a license

---

[1] *State v. Scherrer*, 673 S.W.3d 899, 907 (Mo. App. E.D. 2023).

2

plate reader (LPR) to track Wiley's vehicle near the scene. Police arrested Wiley two days later on April 16, 2022, and matched a gun found with him to shell casings recovered from the scene of the crime.

The State charged Wiley with committing first-degree assault and armed criminal action for the conduct against A.H., and third-degree domestic assault and first-degree burglary for the conduct against Victim. The trial court denied bond. While waiting for trial, on June 21, 2023, Wiley filed a pro se request for a speedy trial and a pro se motion for a recognizance bond, both of which the trial court denied.

The case proceeded to trial on November 27, 2023—590 days after Wiley's arrest. Before trial, Wiley moved to have his indictment dismissed for violation of his speedy trial rights. The trial court denied the motion, finding that the current setting was the earliest opportunity to try the case and that Wiley failed to show prejudice to his defense. The trial court granted Wiley's motion in limine barring the State from referencing any prior bad acts unrelated to the current charges, including whether Wiley violated a protection order. The State informed the trial court that it was not intending to get into the possible protection order violation and that it had instructed its witnesses not to talk about it or any other prior incidents.

During trial, Victim, A.H., and Neighbor testified. The State also called several law enforcement officers, including Detective, who testified about Wiley's police interview. When asked about where he was on the day of the offense, Wiley initially said he was driving around St. Louis looking for scooters to pick up. When asked whether he had gone to Victim's house, he denied knowing her address but said he knew how to get there. When confronted about his license plate being tracked near Victim's home on the day of the offense, he admitted the plate was for his car but denied going to her home, saying the last time he had been to Victim's home

3

was two weeks ago. Wiley first told police he had gone to Victim's home two weeks earlier to drop off his child, then later recanted and said he had gone to Victim's home two weeks earlier because he had not seen his child in several months to a year. Detective testified that he confronted Wiley about whether it had really been a whole year since he went to Victim's home, and "[w]e talked about the order of protection because she [Victim] had an order of protection." Defense objected to the Detective mentioning the order of protection on the grounds that the State had not proved the order of protection was properly served on Wiley at that time and because the testimony violated the motion in limine prohibiting prior bad acts evidence. The trial court admitted the testimony over defense objection, ruling that it went to the *res gestae*[2] of Wiley's statement. The State did not elicit any further testimony about the disputed order of protection from Detective or any other witness.

Additionally, during trial, the State adduced the following evidence about the role played by the Metropolitan St. Louis Police Department's Domestic Abuse Response Team (DART) in investigating the case:

State: Now, who eventually did the scene get turned over to?

Detective: It was determined to be what the events occurred and how everyone was connected to each other, the sergeant on scene radioed the DART unit, which stands for the domestic abuse response team. They responded out to the scene and they took over primary investigative duties.

State: Why would the DART officers be involved in this case?

Detective: [Victim] and [Wiley] had a child in common and were involved in a previous relationship.

State: So that would make it a domestic situation.

Detective: Yes, sir.

---

[2] *Res gestae*, meaning 'things done,' refers to the sequence of events surrounding the charged offense. *State v. Davis*, 226 S.W.3d 167, 170 (Mo. App. W.D. 2007) (internal citation omitted).

4

Another officer who investigated the charges also testified and identified his role within the police department as a "domestic violence detective." Wiley did not object to either testimony. Wiley did not testify or put on evidence in his defense.

The jury found Wiley guilty of first-degree assault, armed criminal action, and third-degree domestic assault. The jury found Wiley not guilty of first-degree burglary. The trial court sentenced Wiley to a total of eighteen years in prison. Wiley now appeals.

Standard of Review

We review a trial court's evidentiary ruling for an abuse of discretion. *State v. Wright*, 551 S.W.3d 608, 616 (Mo. App. E.D. 2018) (citing *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009)). "An abuse of discretion occurs only if the [trial] court's ruling admitting or excluding evidence 'is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020) (quoting *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016)). "If reasonable minds could differ on the propriety of the ruling, no abuse of discretion has occurred." *State v. Pool*, 674 S.W.3d 173, 179 (Mo. App. E.D. 2023) (internal quotation omitted). We will reverse for an abuse of discretion "only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." *Loper*, 609 S.W.3d at 731 (internal quotation omitted).

We also review for an abuse of discretion a trial court's overruling a motion to dismiss charges for violation of the right to a speedy trial. *State v. Lewis*, 707 S.W.3d 653, 655 (Mo. App. E.D. 2024) (internal citation omitted). However, "[w]hile the trial court's factual findings are subject to deferential review, [an appellate] [c]ourt will review *de novo* whether [a defendant's] Sixth Amendment right to a speedy trial was violated." *State v. Scherrer*, 673

5

S.W.3d 899, 908 (Mo. App. E.D. 2023) (quoting *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015) (alterations in source)); *see also Lewis*, 707 S.W.3d at 655 (internal citation omitted) (noting "where the facts [in the speedy-trial record] are uncontested and the issue is a matter of statutory construction, the ruling is subject to *de novo* review.").

Any unpreserved claims of error may not be reviewed except under the plain-error standard. *Loper*, 609 S.W.3d at 731 (citing Rule 30.20[3]). "[T]his Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* (internal quotation omitted).

Discussion

**I.      Point One—The trial court did not err in denying Wiley's speedy-trial motion to dismiss the charges against him**

A defendant is guaranteed the right to a speedy trial under both the Sixth Amendment to the U.S. Constitution and article I, § 18(a) of the Missouri Constitution. *Sisco*, 458 S.W.3d at 313 (internal citation omitted). "A primary purpose of the right to a speedy trial is 'to guard against inordinate delay between public charge and trial,' and thus prevent prejudice to a meritorious defense or interference with a defendant's liberty." *Scherrer*, 673 S.W.3d at 908 (quoting *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring)). When a defendant alleges that right has been violated, courts balance the four *Barker* factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay." *Sisco*, 458 S.W.3d at 313 (quoting *Barker*, 407 U.S. at 530). "The existence of any one of these factors is neither necessary nor sufficient to finding a deprivation of the right to a speedy trial." *Id.* (quoting *Barker*, 407 U.S. at 533). "Rather, 'courts must . . . engage in a difficult and sensitive balancing process." *Id.* (quoting *Barker,*

---

[3] All Rule references are to Mo. R. Crim. P. (2025).

6

407 U.S. at 533). Applying that balancing process to the instant case, we find the trial court did not err in denying Wiley's speedy-trial motion due to the factors regarding the reasons for delay and the lack of prejudice. *See id.*

### 1. Length of delay

"The length of the delay is a 'triggering mechanism' because until there is a 'delay [that] is presumptively prejudicial,' there is no need to discuss the other factors that are part of the balancing process." *State v. Vickers*, 560 S.W.3d 3, 14 (Mo. App. W.D. 2018) (quoting *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 911 (Mo. banc 2010)). "Missouri courts have found that a delay of greater than eight months is presumptively prejudicial." *Id.* at 14–15 (quoting *Garcia*, 316 S.W.3d at 911).

The parties agree the length of delay here is presumptively prejudicial because the trial began 590 days after Wiley was arrested. *See id.* The parties further agree that after subtracting the delays caused by defense, the remaining delay is approximately one year, which is also presumptively prejudicial. *See id.* Accordingly, we proceed with analyzing the remaining factors. *See id.*

### 2. Reason for delay

Wiley twice caused delays by seeking continuances in order to obtain legal representation from April 25 to May 2, 2022 and from May 12 to May 20, 2022. "[D]elays attributable to the defendant weigh heavily against the defendant[.]" *Coleman v. State*, 640 S.W.3d 159, 166 (Mo. App. E.D. 2022) (quoting *Sisco*, 458 S.W.3d at 314). Wiley and the State jointly sought four continuances: from July 25 to September 6, 2022; from December 2, 2022 to January 30, 2023; from August 10 to August 18, 2023; and from August 18 to the date trial began on November 27, 2023. "[D]elays that are jointly requested by the parties are neutral factors in the analysis." *Id.* (citing *Sisco*, 458 S.W.3d at 314). The other delays, totaling over 300 days, were attributable to

the trial court's routine docket management with no indications of bad faith efforts to hamper the defense. Such delays caused by unexplained or neutral reasons "weigh against the State, but not heavily." *Id.* (citing *Sisco*, 458 S.W.3d at 314). "Pretrial delay is often inevitable and wholly justifiable." *State v. Davis*, 903 S.W.2d 930, 936 (Mo. App. W.D. 1995) (internal citation omitted). The trial was held on the first available trial setting. Therefore, this factor weighs in favor of Wiley, but not heavily. *See Coleman*, 640 S.W.3d at 166 (citing *Sisco*, 458 S.W.3d at 314); *see also Vickers*, 560 S.W.3d at 16.

### 3. Assertion of defendant's right

Wiley filed a pro se request for a speedy trial over one year after his arrest. He also moved for a recognizance bond at that time, and the trial court denied both requests. "Waiting several months to assert the right to a speedy trial has been found to weigh against a defendant." *Vickers*, 560 S.W.3d at 17 (internal quotation omitted); *see e.g.*, *Coleman*, 640 S.W.3d at 166 (finding this factor weighs in a defendant's favor when he asserts his speedy-trial right "early and often"). "Although [a] defendant has no duty to bring himself to trial, . . . failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Vickers*, 560 S.W.3d at 16 (quoting *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 729 (Mo. banc 2007)) (alterations in source). After asserting his right to a speedy trial, Wiley subsequently joined the State in requesting two continuances to allow time for depositions to prepare for the trial setting, which undermines a claim that speedy trial rights were violated.[4] *See id.* This factor therefore weighs against Wiley. *See id.*

---

[4] One week before trial, Wiley considered waiving his right to counsel because, as he alleged to the trial court, his public defender was ineffective for taking too long to have the case tried. Wiley ultimately decided against waiver.

### 4. Prejudice

When determining prejudice, there are three main concerns: "(1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired." *Sisco*, 458 S.W. at 317 (quoting *Garcia*, 316 S.W.3d at 912). The most serious concern is impairment of the defense. *Id.*

Wiley contends that he suffered prejudice because he was incarcerated during the pretrial proceedings. "Although the restriction of freedom that comes with being incarcerated may give rise to actual prejudice, [a] [d]efendant's general claim of prejudice based upon the length of his incarceration establishes only ***minimal*** prejudice." *State v. Smith*, 491 S.W.3d 286, 307–08 (Mo. App. E.D. 2016) (citing *Sisco*, 458 S.W.3d at 317; *State v. Raine*, 829 S.W.2d 506, 513 (Mo. App. W.D. 1992)) (emphasis added). Wiley's bare allegation of pretrial oppression thus establishes only minimal actual prejudice. *See id.* (citing *State v. Greenlee*, 327 S.W.3d 602, 613 (Mo. App. E.D. 2010)); *see also Wright*, 551 S.W.3d at 620. Wiley alleges that he experienced anxiety and concern due to the delay, however, "anxiety alone does not establish prejudice absent the showing of specific instances that weighed heavily on the defendant." *Coleman*, 640 S.W.3d at 166 (quoting *Greenlee*, 327 S.W.3d at 613). Wiley's vague allegations do not amount to serious concerns of prejudice. *See id.* at 166–67.

In any event, even "actual prejudice resulting from pretrial incarceration may be outweighed by a lack of impairment to the defense." *State v. Juniel*, 568 S.W.3d 504, 514 (Mo. App. W.D. 2019) (internal citation omitted); *see also Wright*, 551 S.W.3d at 620 (declining to find prejudice where it was purely speculative whether the delay prevented the defendant from calling a certain witness even though the record showed the defendant suffered from untreated asthma and was unable to see his children while incarcerated). For this most critical concern, Wiley only generally alleges that he was prejudiced by the delay because witnesses' memories

could deteriorate over time. Wiley did not call any witnesses at trial and "does not identify any witnesses who disappeared or otherwise became unavailable because of the delay, nor does he allege that any evidence was lost." *Juniel*, 568 S.W.3d at 514 (quoting *Sisco*, 458 S.W.3d at 317). "Any prejudice from the delay must be actual and apparent, or at least inferable, from the record, rather than merely speculative." *Coleman*, 640 S.W.3d at 166 (internal quotation omitted). Because the record strongly suggests that the pretrial delay did not hinder Wiley's defense, this factor weighs heavily in favor of the State. *See Wright*, 551 S.W.3d at 621.

### 5.  Balancing the *Barker* factors

Balancing the factors, we conclude Wiley's right to a speedy trial was not violated. *See Juniel*, 568 S.W.3d at 515 (citing *Sisco*, 458 S.W.3d at 319). Although the length of delay of 590 days was presumptively prejudicial, triggering our obligation to review the remaining *Barker* factors, that presumption was attenuated by Wiley's own twelve-month delay in making a speedy trial request and in acquiescing to joint continuances. *See id.* Most importantly, Wiley has not demonstrated sufficient actual prejudice to his defense, which weighs heavily in favor of the State. *See Coleman,* 640 S.W.3d at 167 (internal citation omitted). Therefore, the trial court did not err in denying Wiley's speedy-trial motion. *See Sisco*, 458 S.W.3d at 313 (citing *Barker*, 407 U.S. at 530). Point One is denied.

**II.  Point Three—The trial court did not abuse its discretion in admitting testimony about an order of protection**

Turning to the remaining points on appeal, we begin with Point Three because it was preserved for appellate review.

Generally, Missouri courts prohibit introducing prior bad act evidence "to show that a defendant is a person of bad character or has a propensity to commit crimes." *State v. Graves*, 619 S.W.3d 570, 575 (Mo. App. E.D. 2021) (citing *State v. Conley*, 873 S.W.2d 233, 236 (Mo.

10

banc 1994)). "However, such evidence of prior misconduct may be admissible if it is logically relevant, in that it has some legitimate tendency to directly establish the defendant's guilt of the charged offense." *State v. Davis*, 226 S.W.3d 167, 170 (Mo. App. W.D. 2007) (internal citation omitted). For example, one recognized exception is the *res gestae*, also known as evidence "present[ing] a complete and coherent picture of the criminal events that transpired." *Id.* Even if the evidence is logically relevant to painting a complete and coherent picture of the criminal acts, "[t]he evidence also must be legally relevant, in that its probative value must outweigh its prejudicial effect." *Id.*

Here, Detective testified about confronting Wiley in a police interview regarding inconsistencies in his story as to when he was last at Victim's home. Within that context, Detective testified that he spoke with Wiley "about the order of protection because she [Victim] had an order of protection." On appeal, Wiley argues the trial court erred in admitting this testimony over his objection because informing the jury that Victim had obtained a protection order against Wiley was impermissible evidence of prior uncharged bad acts committed by Wiley against Victim. Further, Wiley maintains the evidence was not relevant impeachment evidence because the State never proved Wiley had notice of the order of protection.

"Evidence is admissible if it tends to prove one issue in dispute, even though it is not admissible to prove other issues and may be prejudicial." *State v. Clevenger*, 289 S.W.3d 626, 629 (Mo. App. W.D. 2009) (finding a trial court abused its discretion in admitting evidence of an order of protection for lack of relevance to any disputed issue at trial). We agree that mentioning Victim's order of protection created a logical inference that Victim must have alleged Wiley committed prior bad acts against her in order to be granted that protective order, which would make the Detective's testimony prohibited by the general rule. *See Graves*, 619 S.W.3d at 575

11

(citing *Conley*, 873 S.W.2d at 236).  However, the trial court here found that the order of protection, which would otherwise be inadmissible propensity evidence, was nevertheless admissible as relevant to the *res gestae* of the crime, namely, to Wiley's account of what led up to the incident on April 14, 2022 at Victim's home.  *See Davis*, 226 S.W.3d at 170.

"Acts or events are a part of the *res gestae* if they occur in the same transaction as the crime, are substantially contemporaneous with the commission of the crime and are part of one continuous transaction in the accomplishment of a common design."  *State v. Winston*, 657 S.W.2d 399, 401 (Mo. App. W.D. 1983) (internal citation omitted).  Whether evidence of uncharged bad acts should be admitted to show the *res gestae*, or complete and coherent picture of the offense at issue, "requires a 'balancing of the effect and value' of the evidence and 'rests within the sound discretion of the trial court.'"  *Davis*, 226 S.W.3d at 170 (internal quotation omitted).  "Generally, acts, statements, occurrences and the circumstances forming part of the main transaction may be shown in evidence under the *res gestae* rule where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue."  *Id.* at 170–71 (citing *State v. Sherman*, 637 S.W.2d 704, 706 (Mo. banc 1982)).

The State charged Wiley with committing two counts of assault against two victims at Victim's home.  Because Wiley initially denied having been to Victim's home on the date of the offenses and disputed when he last went to Victim's home, Detective's testimony about Wiley's inconsistent statements was generally relevant to disputed issues in the case.  *See id.*  However, we agree with Wiley that there would be little impeachment value to the officer confronting Wiley about an order of protection if indeed it had not yet been served.  *See id.*; *Clevenger*, 289 S.W.3d at 628–29.  Thus, we are not persuaded the probative value outweighed its potential

12

prejudicial effect. *See Davis*, 226 S.W.3d at 170 (internal citation omitted). Therefore, to the extent the order of protection was mentioned without establishing that Wiley actually knew of it at the relevant time period, we would find the legal relevance balancing test would weigh against admission, such that the trial court abused its discretion. *See id.*

Notwithstanding, Wiley wholly fails to demonstrate that any error in admitting the testimony resulted in actual prejudice as required for reversal. *See id.* at 169; *see also Loper*, 609 S.W.3d at 731 (internal quotation omitted). No prejudice results unless "the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *State v. Stafford*, 589 S.W.3d 705, 712 (Mo. App. E.D. 2019) (internal quotation omitted). In determining whether a reference to an uncharged offense is prejudicial, we consider "whether the State prompted or emphasized the reference, whether the reference was fleeting and isolated, whether specific offenses were mentioned, whether an objection was made and sustained, and whether the reference played a decisive role in the verdict given the context of the State's case against the defendant." *Id.* (citing *State v. Goff*, 129 S.W.3d 857, 866 n.7 (Mo. banc 2004)); *see also Graves*, 619 S.W.3d at 575 (internal citation omitted) (analyzing the prejudicial effect of uninvited evidence of other crimes in the context of whether the trial court should have declared a mistrial).

In this case, Wiley's allegation of prejudice is purely speculative. The jury was not told what conduct prompted Victim to seek an order of protection against Wiley. The State did not deliberately elicit the evidence, which was offered unprompted by Detective when describing how he confronted Wiley on inconsistent statements. Further, the order of protection was only mentioned in passing and did not violate the motion in limine barring the State from adducing

13

evidence that Wiley **violated** the order of protection in that the testimony only referred to whether Wiley knew an order of protection existed. The State did not emphasize or unduly highlight the challenged testimony. Ultimately, we are not persuaded that a single, isolated mention of an order of protection—which had been issued, even if Wiley had not yet known of it—amounted to an error that unfairly prejudiced the outcome of Wiley's trial. *See Stafford*, 589 S.W.3d at 712 (citing *Goff*, 129 S.W.3d at 866 n.7) (finding no prejudice in the admission of uncharged bad act evidence where the record showed the State did not improperly highlight the evidence during the presentation of evidence or in closing argument). Point Three is denied.

III.     **Point Two—We decline plain-error review as Wiley fails to demonstrate manifest injustice resulting from the trial court's admission of DART testimony**

Lastly, Wiley requests we exercise our discretion to conduct plain-error review of whether the trial court erroneously admitted evidence that DART investigated the offenses because the State failed to prove a domestic situation between Wiley and Victim. Wiley acknowledges that he did not object to the evidence at trial, nor did he include it in his motion for new trial.

Plain-error review is discretionary. *Loper*, 609 S.W.3d at 733 (internal quotation omitted). "Including a claim of error in a motion for new trial is a requirement of preserving an issue for review, but a claim of error is not wholly preserved absent a timely objection at trial." *Id.* (internal quotation omitted). In this case, the alleged error was not brought to the attention of the trial court at trial or after trial. "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (internal quotation omitted). "Unless manifest injustice or a miscarriage of justice is shown, an appellate court should 'decline to review for plain error under Rule 30.20.'" *Id.* (internal quotation omitted).

14

We find Wiley has not facially established substantial grounds for believing that manifest injustice or a miscarriage of justice resulted from the brief mention of DART. *See id.*; *see also Loper*, 609 S.W.3d at 731 (internal quotation omitted). In particular, Wiley was charged with domestic assault in the third degree, and the State adduced evidence of a domestic situation between Wiley and Victim through evidence that Wiley and Victim had children together. *See Burgess v. State*, 649 S.W.3d 47, 51 (Mo. App. E.D. 2022) (quoting § 455.010(7), RSMo (2016)) (noting proof for domestic assault that a defendant and victim had a continuing social relationship of a romantic or intimate nature includes "anyone who has a child in common regardless of whether they have been married or have resided together at any time"). Additionally, Wiley did not object to Victim's testimony that she had some problems with him in the past and was concerned about what was going to happen to her when he broke into her home. "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." *Brandolese*, 601 S.W.3d at 536 (internal quotation omitted). Finding no substantial grounds of manifest injustice in the unchallenged DART testimony, Wiley has not met his burden for plain-error review, and we deny Point Three. *See id.*

<u>Conclusion</u>

The judgment of the trial court is affirmed.

Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
Virginia W. Lay, J., concur.

15