**STATE ex rel. David T. GARCIA, Relator,**

v.

**The Honorable Steven H. GOLDMAN, Respondent.**

**No. SC 90833.**

Supreme Court of Missouri,
En Banc.

July 16, 2010.

Rehearing Denied Aug. 31, 2010.

Joseph Yeckel, Law Office of Joseph F. Yeckel LLC, and Grant J. Shostak, Shostak & Shostak LLC, St. Louis, for Relator.

Robert P. McCulloch, David R. Truman and John Quarenghi, St. Louis County Prosecuting Attorney's Office, Clayton, for the State.

John L. Davidson, John L. Davidson PC, St. Louis, for Missouri Association of Criminal Defense Lawyers, which filed a brief as a friend of the Court.

MICHAEL A. WOLFF, Judge.

### Introduction

David Garcia was indicted eight years ago for a shooting that occurred 12 years ago in Kirkwood. Although he has been employed, paying taxes and living openly in Chicago for the past 10 years, the police made no serious attempt to find him until 2009, when a police officer looked him up in a computer database. After his arrest in Chicago and return to St. Louis County for trial, Garcia moved to dismiss the charge, contending that police and the prosecution violated his constitutional right to a speedy trial. The victim of the shooting was wounded seriously, but the case apparently received scant attention. In the circumstances here, the state has denied Garcia's right to a speedy trial.

### Facts

Kwan Tung Tse, the owner of the Sunny China Buffet in Kirkwood, heard a knock on the kitchen door in April 1998, opened it and let in a man who entered, talked to an employee and then left. The man returned about a minute later carrying a shotgun, shot employee Rigoberto Dominguez in the abdomen and left. Dominguez was hospitalized but survived the attack.

Meliton Gonzalez, another employee at Sunny China, followed the assailant out the door after the shooting and saw him get into a brown coupe. Gonzalez identified the assailant as David Garcia. Dominguez, the victim, and Manuel Castro, another Sunny China employee, also identified the assailant as Garcia. Dominguez told police Garcia shot him because Dominguez had been talking about Garcia's girlfriend two days earlier. Kirkwood police interviewed three other witnesses around the time of the shooting: Nabor Garcia (Garcia's cousin and housemate), Jesus Rojas and Moises Aguilar.

The police found a Mossburg pump-action 12–gauge shotgun hidden in the bushes near the doorway exiting from the kitchen area. Police took photographs of the scene and prepared a diagram of the kitchen area of Sunny China. In addition, they conducted videotaped interviews of Nabor Garcia and Gonzalez. These videotapes have been lost.

Through their investigation, police obtained Garcia's date of birth, driver's license number, social security number and address. Police then searched the apartment Garcia shared with Nabor Garcia and canvassed the apartment complex. Police were told that if Garcia were to leave the St. Louis area, he might go to California or Illinois. Detective Michael Bales testified that he could not recall any of the locations he visited after searching the Garcias' apartment and that he could not remember to whom he spoke at the apartment complex besides Nabor Garcia. Police were unable to locate David Garcia.

Nearly three years after the shooting, the St. Louis prosecuting attorney's office asked Kirkwood police to make further attempts to find David Garcia, because the statute of limitations for the crime was running out. Police received information that Garcia might be in Breckenridge Hills, St. Ann or other communities in north and central St. Louis. Kirkwood police sergeant Steven Guyer attempted to locate Garcia on four days in late February or early March 2001. Guyer was admitted into three residences but did not locate Garcia. No reports were prepared documenting these efforts to locate Garcia.

Garcia was charged by indictment in February 2002 with first-degree assault. The police made no efforts to look for Garcia during the next seven years; according to a Kirkwood detective, the case had become "cold."

In early 2009 Kirkwood Detective Steve Urbeck entered Garcia's social security number into the Accurint computer system and received a Chicago address for Garcia. Detective Urbeck contacted the Chicago police department's fugitive apprehension service and requested its assistance. Chicago police determined that Garcia was working at a Chicago hotel and arrested him in February 2009.

Garcia was living openly in Chicago, using his actual name, date of birth and social security number since at least 2002. The trial court found that the social security number could have been used to locate Garcia in 2002 or before. Garcia filed tax returns from 2000 to 2008 using his real information. He opened several credit card accounts and obtained a Missouri driver's license using his St. Louis address. Garcia's whereabouts between the April 1998 shooting and September 2000 are unknown.

Garcia filed a motion to dismiss the indictment against him, alleging a violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution. The parties stipulate that witnesses Nabor Garcia, Moises Aguilar, Manuel Castro and Jesus Rojas cannot be found and are currently unavailable. They also stipulate that the videotaped statements of Nabor Garcia and Meliton Gonzalez are unavailable and that Sunny China was demolished two years before Garcia's arrest. The respondent circuit court, balancing the factors discussed below and the evidence, overruled the motion to dismiss. The court found that Garcia knew that there were witnesses at the scene of the shooting, that police would be searching for him, that he fled his home address, and that there was no evidence that Garcia was aware of the indictment or arrest warrant. The court also concluded the police did not use reasonable diligence to find Garcia.

Garcia filed a petition for writ of mandamus with this Court, which issued its preliminary writ pursuant to article V, section 4 of the Missouri Constitution.[1]

## Analysis

A defendant's right to a speedy trial arises under the Sixth Amendment to the United States Constitution,[2] which applies

---

1. This Court has the authority to "issue and determine original remedial writs" pursuant to Missouri Constitution article V, section 4.1. A writ of mandamus will issue to "compel the performance of a ministerial duty that one charged with the duty has refused to perform." *Furlong Cos., Inc. v. City of Kansas City*, 189 S.W.3d 157, 165–66 (Mo. banc 2006). "A litigant asking [sic] relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Id.* at 166.

2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and

to the states through the Fourteenth Amendment.[3] *Klopfer v. North Carolina*, 386 U.S. 213, 222, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). These constitutional provisions "provide equivalent protection for a defendant's right to a speedy trial." *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 729 (Mo. banc 2007).

■ "[T]he protections of the speedy trial provisions attach when there is a 'formal indictment or information' or when 'actual restraints [are] imposed by arrest and holding to answer a criminal charge.'" *State of Missouri v. Bolin*, 643 S.W.2d 806, 813 (Mo. banc 1983) (quoting *Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975)). Garcia's right to a speedy trial accrued when he was indicted in February 2002.[4] The relevant inquiry in this case is whether the seven-year period between Garcia's indictment and arrest violated his speedy trial rights.

■ The determination of whether there has been a violation of speedy trial rights involves a balancing process. In determining whether Garcia's right to speedy trial has been violated, the Court is to consider and balance all of the circumstances and to weigh four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ 1. The length of the delay is a "triggering mechanism" because until there is a "delay [that] is presumptively prejudicial," there is no need to discuss the other factors that are part of the balancing process. *Id.* Missouri courts have found that a delay of greater than eight months is "presumptively prejudicial." *See McKee*, 240 S.W.3d at 729. The trial court found, and both parties agree, that the nearly seven-year delay in this case between Garcia's indictment and arrest is presumptively prejudicial.

■ 2. The reason for the delay. Different weights are assigned to different reasons for a delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. A deliberate attempt by the state to delay the trial is weighted heavily against the government, while "[a] more neutral reason such as negligence ... should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* The trial court found that the police did not use reasonable diligence to find Garcia. After the grand jury indicted Garcia in February 2002, there is no evidence that the police made any effort to locate Garcia until February 2009. This is indeed a lack of diligence and negligence on behalf of the state that weighs against the state.

The trial court also found that Garcia fled from St. Louis after the shooting and that he "knew there were witnesses at the scene and police would be searching for him." The issue is whether this action should be weighed against Garcia. The state argues Garcia fled St. Louis and, therefore, should bear some responsibility for the delay in his apprehension and prosecution. Garcia argues that the state offered no evidence that he left Missouri or concealed his identity to avoid prosecution

---

district wherein the crime shall have been committed...."

**3.** Article I, section 18(a) of the Missouri Constitution provides "[t]hat in criminal prosecutions the accused shall have the right to ... a

speedy public trial by an impartial jury of the county."

**4.** *C.f. United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

and, therefore, that the state's negligence was the sole responsibility for the delay.

The police searched for Garcia on two occasions: once immediately after the shooting and a second time in early 2001. Garcia's whereabouts from the time of the shooting in April 1998 until his application for a job in Chicago in September 2000 are unknown. Although the police were informed that Garcia might go to California or Illinois, there is no evidence that anyone had actual knowledge that he left the state.

Garcia lived openly and notoriously throughout the entire post-indictment period, albeit in Chicago, in a foreign jurisdiction. The trial court found that he could have been found using the same method that eventually was used to find him, by inserting his social security number into Accurint, in 2002 or before. There was no evidence that Garcia knew of the indictment against him. In the absence of evidence that Garcia did something wrong, this factor—the reason for the delay—weighs against the state.

3. The third *Barker* factor is the defendant's timely assertion of his right. Garcia asserted his right to a speedy trial in December 2009, 10 months after he first found out about the indictment and was arrested. The trial court found Garcia's assertion to be "a reasonable time frame for [Garcia] to raise this claim." Both parties agree that this factor weighs in favor of Garcia.

4. The last *Barker* factor is prejudice to the defendant resulting from the delay. There are three considerations in determining whether a delay has prejudiced the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired. *Bolin*, 643 S.W.2d at 815 (citing *Barker*, 407

U.S. at 532, 92 S.Ct. 2182). These three considerations represent the interests of a defendant that the right to a speedy trial is intended to protect. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. Courts regard the third consideration as the most serious. *Id.* "[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system. *If witnesses die or disappear during a delay, the prejudice is obvious.* There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Id.* (Emphasis added). This third consideration—impairment to Garcia's defense—is the only one applicable in this case.

The impairment to his defense, Garcia argues, is threefold: (1) the disappearance of four witnesses; (2) the loss of the videotaped interviews of Nabor Garcia and Meliton Gonzalez; and (3) the demolition of the crime scene, Sunny China Buffet. The state argues, and the trial court found, that Garcia presented no evidence that he was prejudiced. Generally, prejudice must be "actual prejudice apparent on the record or by reasonable inference—not speculative or possible prejudice." *State v. Edwards*, 750 S.W.2d 438, 442 (Mo. banc 1988).

More recently, however, the United States Supreme Court allowed a speedy trial claim to stand absent particularized prejudice. *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Negligence, the Supreme Court said, is not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 657, 112 S.Ct. 2686. In *Doggett*, the defendant was indicted in February 1980 for conspiring to import and distribute co-

caine. *Id.* at 648, 112 S.Ct. 2686. About one month later, police officers went to the home of Doggett's parents and found out that he had left for Colombia four days earlier. *Id.* at 649, 112 S.Ct. 2686. The Drug Enforcement Administration (DEA) put Doggett's name in a computer system so that he could be apprehended on his return to the United States, but the entry expired. In September 1981, the DEA learned that Doggett had been arrested in Panama. The DEA asked for Doggett to be "expelled" to the United States, but Panama did not comply with the request. Doggett was freed in July 1982 and went to Colombia. *Id.* at 649, 112 S.Ct. 2686. In September 1985, he entered the United States through customs and settled in Virginia, where he married, earned a college degree, was employed and lived under his own name. In 1982, the American embassy in Panama told the State Department of Doggett's departure to Canada, but the DEA did nothing. In 1985, the DEA discovered that Doggett went to Colombia, but it made no attempt to track him down. *Id.* at 649–650, 112 S.Ct. 2686. Doggett was arrested in September 1988 after a simple credit check by the marshal's service found out where he lived and worked. *Id.* at 650, 112 S.Ct. 2686. Doggett sought to dismiss his indictment, claiming it violated his right to a speedy trial.

Using the *Barker* factors, the Supreme Court found that Doggett's rights were violated. The Court readily found that the first three factors weighed against the government.[5] In analyzing *Barker*'s fourth factor, prejudice to the defendant, the Supreme Court stated that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," as "excessive delay presumptively com-

promises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655, 112 S.Ct. 2686. The Court recognized that, although the government's negligence is not weighed as heavily as deliberate actions, it is still an unacceptable reason to delay a trial. *Id.* at 657, 112 S.Ct. 2686. Further, the Supreme Court said, "[c]ondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." *Id.* The Court ultimately concluded that "inexcusable oversights" that resulted in the delay of Doggett's arrest for six years entitled Doggett to relief even if he did not demonstrate actual prejudice. *Id.*

■ In this case, the state has not proven that the delay "affirmatively ... left [Garcia's] ability to defend himself unimpaired" as required to rebut the presumption of prejudice. *Id.* Four witnesses to the shooting, Nabor Garcia, Moises Aguilar, Manuel Castro and Jesus Rojas, have disappeared. In such a circumstance, *Barker* compels the conclusion that the prejudice to Garcia is obvious. 407 U.S. at 532, 92 S.Ct. 2182. Of the seven witnesses to the shooting that police identified, four are missing and a fifth, Kwan Tung Tse, the owner of Sunny China, described the shooter but did not identify him by name. Only two witnesses, Dominguez (the victim) and Gonzalez, appear to be available to testify as to the assailant's identity. Their testimony will be to events that occurred more than 12 years ago. The state must show that Garcia's defense was unimpaired. Too many witnesses and too many

---

5. In analyzing the "reason for the delay," the court attributed the entire reason to the negligence of the government. There was no discussion of whether Doggett's actions constituted "flight." *Doggett*, 505 U.S. at 652–53, 112 S.Ct. 2686.

years have slipped away for the state to carry this burden.

## Conclusion

The seven-year delay between the indictment and Garcia's arrest violates his right to a speedy trial under the Sixth Amendment to the United States Constitution. The circuit court should have dismissed the indictment. The Court's preliminary writ of mandamus is made permanent.

TEITELMAN, RUSSELL and STITH, JJ., concur.

PRICE, C.J., dissents in separate opinion filed.

BRECKENRIDGE and FISCHER, JJ., concur in opinion of PRICE, C.J.

WILLIAM RAY PRICE, JR., Chief Justice, dissenting.

Because Garcia deliberately fled the state, he is the principal cause of the police's delay in locating him. Therefore, he was required to show that actual prejudice resulted from the delay, and he was unable to do so. I respectfully dissent.

The United States Supreme Court set out the four-factor test for evaluating a speedy trial claim in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). While the majority uses the correct test, it reaches the wrong result. The second *Barker* factor asks "whether the government or the defendant is more to blame for the delay." *Id.* On these facts, Garcia was more to blame; he left the jurisdiction. Garcia knew he was suspected of shooting Dominguez at a Chinese restaurant in front of witnesses who could identify him. He knew police would be looking for him. Still, he fled to Chicago. No one alleges here that the police acted in bad faith. *See Smith v. Hooey*, 393 U.S.

374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (government only has duty to make diligent, good faith effort). Even if the Kirkwood police were not "a model of prosecutorial initiative and concern," when a defendant leaves the jurisdiction after committing a crime, he cannot later claim that his right to a speedy trial was violated. *State v. Black*, 587 S.W.2d 865, 877 (Mo.App.1979) (government's delay is weighed against complete lack of actual prejudice to defendant resulting from it); *Reynolds v. Leapley*, 52 F.3d 762, 764 (8th Cir.1995) (no speedy trial violation occurred where "most of the nine year delay was caused by the fact that [the defendant] fled the jurisdiction following his offense"); *United States v. Escamilla*, 244 F.Supp.2d 760, 765–66 (S.D.Texas 2003) (no speedy trial violation occurred where, even though the government's efforts to find defendant were negligent, defendant was still the principal cause of the delay).

There is no requirement that the government make "heroic efforts to apprehend a defendant who is purposely avoiding apprehension." *Rayborn v. Scully*, 858 F.2d 84, 90 (2nd Cir.1988). The majority ignores the plain fact that police departments have limited resources. Worse, the majority creates further incentive for criminal defendants to conceal themselves from justice. *United States v. Salzmann*, 548 F.2d 395, 404 (2nd Cir. 1976) (Feinberg, J., concurring) (allowing criminal defendants who successfully escape detection to bring speedy trial claims sanctions game playing). It was Garcia, not the state, who was the principal cause of the delay.

Because the second *Barker* factor weighs against Garcia, he is not entitled to a presumption of prejudice when the Court considers the fourth factor. *Wilson v. Mitchell*, 250 F.3d 388 (6th Cir.2001) (defendant not entitled to presumption of

prejudice because he was partially responsible for the delay); *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir.1993) (*Doggett* presumption of prejudice not applicable to defendant who contributed two-thirds of total delay); *Reynolds*, 52 F.3d at 764; *United States v. Bergfeld*, 280 F.3d 486 (5th Cir.2002); *United States v. Cardona*, 302 F.3d 494 (5th Cir.2002).

The Sixth Amendment contemplates three harms arising from excessive trial delay: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. Because Garcia was never incarcerated and because he claims he did not know about the charges against him, the "only harm to petitioner from the lapse of time was potential prejudice to his ability to defend his case." *Doggett v. United States*, 505 U.S. 647, 658–59, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (O'Connor, J., dissenting). The majority concedes that *speculative* or *possible* prejudice is not enough. Majority opinion at 912 (quoting *State v. Edwards*, 750 S.W.2d 438, 442 (Mo. banc 1988); *Doggett*, 505 U.S. at 667, 112 S.Ct. 2686 (Thomas, J., dissenting) (government negligence and possible prejudice not enough for a speedy trial violation)).

Yet Garcia made no attempt to show actual prejudice, and for reason. He, like all criminal defendants, enjoys a presumption of innocence. According to the parties' stipulation, four witnesses are now unavailable, two videotaped witness statements cannot be located, and the Chinese restaurant where Garcia shot Dominguez no longer exists.[1] But it is the *state* that has to prove its case beyond a reasonable doubt. Absent a specific showing, it is difficult to see how the disappearance of

the government's key witnesses will prejudice Garcia. At minimum, "delay is a two-edged sword." *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (the passage of time may make it difficult or impossible for the state to carry its burden); *Barker*, 407 U.S. at 521, 92 S.Ct. 2182 (unlike other constitutional rights, the deprivation of the right to a speedy trial may work to the accused's advantage). Further, the seven-year delay—in itself—does not prove prejudice. The Eighth Circuit has found even a 19–year delay to not violate the Sixth Amendment. *See United States v. Wangrow*, 924 F.2d 1434 (8th Cir.1991). It is undisputed that Garcia did not demonstrate actual prejudice. The second and fourth *Barker* factors weigh in favor of the state.

Mandamus is an extraordinary remedy. Because Garcia has not shown that he has a "clear and unequivocal right" to relief, I would quash the writ. *McKee v. Riley*, 240 S.W.3d 720, 725 (Mo. banc 2007).

---

1. However, much evidence does still exist—among it, the gun used in the shooting, original crime scene photos, and the victim's testimony.