

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD82331 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | September 15, 2020 |
| GREGORIO L. DAVIS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Platte County, Missouri**
The Honorable Dennis C. Eckold, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Thomas N. Chapman, Judge

Gregorio L. Davis ("Davis") appeals from the judgment of the Circuit Court of Platte County, Missouri ("trial court") convicting him, after a bench trial, of one count of sodomy in the first degree, section 566.060, and one count of domestic assault in the fourth degree, section 565.076.[1]  On appeal, Davis contends that the trial court erred in denying Davis's motion to dismiss because the prosecutor violated his constitutional right to a speedy trial. We affirm.

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as updated, unless otherwise specified.

## Factual and Procedural Background

On August 8, 2017, the State filed a Complaint charging Davis with one count each of sexual abuse in the first degree, section 566.100, and domestic assault in the fourth degree, section 565.076. A warrant was issued and served on Davis on August 11, 2017. Davis's bond was $20,000 cash only, and Davis remained in custody after his arrest.

On September 5, 2017, Davis waived his right to preliminary hearing and was bound over to the circuit court for further proceedings. A judge was assigned to hear the case. On September 25, 2017, the State filed an Information with the same allegations as in the Complaint. On November 16, 2017, the trial court scheduled a jury trial for April 30, 2018. On April 12, 2018, the jury trial was continued on the State's motion and over Davis's objection to June 25, 2018.

On April 17, 2018, Assistant Prosecuting Attorney Chris Seufert ("APA Seufert") took over the prosecution of Davis's case, because the assistant prosecuting attorney who had been handling the case was deployed in the Army Reserves. On that same day, APA Seufert spoke with Davis's counsel and asked him to consent to a change of judge after time to file a motion for change of judge had passed. APA Seufert indicated his desire for a change of judge was because the judge assigned to the case had ruled against the State on another case with facts similar to Davis's case. Davis's counsel refused to consent to a change of judge, and filed a written request for a speedy trial the same day.

On April 20, 2018, the State voluntarily dismissed its case against Davis without prejudice. Davis objected to the dismissal without prejudice, arguing that it would jeopardize his right to a speedy trial and that the dismissal was an attempt to circumvent

Rule 32.07,[2] which provides a ten-day period after an initial plea is entered for a party to request a change of judge. Also on April 20, 2018, the State re-charged Davis, by indictment, of sodomy in the first degree and domestic assault in the second degree. Davis remained in custody.

On April 24, 2018, the State filed for a change of judge in the new case, and trial was set before the newly assigned judge for July 2, 2018. On April 25, 2018, Davis filed his request for a speedy trial in the new case. New counsel entered the case for Davis on June 16, 2018, and simultaneously filed a motion to dismiss for violation of Davis's right to speedy trial. The motion to dismiss was taken up on the first day of trial on July 2, 2018. The judge denied the motion to dismiss, and Davis opted for a bench trial. The case was tried to the court on July 2 and 3, 2018.

The facts adduced at trial established that on July 28, 2017, Davis and his husband, J.D., met A.S. at a bar.[3] A.S. became extremely intoxicated and had little memory of the events at the bar and no memory of leaving the bar. Davis called a friend Stephen Fyffe ("Fyffe") to give the group a ride home. A.S. was stumbling and slurring his speech as he got into the car and then passed out from intoxication during the ride and had to be carried into Davis's house. A.S. was placed on the couch in the living room and Davis, J.D., and Fyffe went into the bedroom where they engaged in sexual activities. Davis repeatedly left the bedroom for several minutes at a time. Fyffe went to check on Davis during one of the absences and found Davis engaging in anal intercourse with A.S., who was unconscious.

---

[2] All rule citations are to Missouri Court Rules, 2017, unless otherwise stated.
[3] Pursuant to section 595.226 RSMo we do not use the victim's names to protect their privacy.

3

Fyffe and J.D. tried to pull Davis off of A.S., telling him that his actions were inappropriate. Davis became angry and pushed them away. Fyffe, J.D., and Davis went back into the bedroom and an argument ensued. Davis punched J.D. multiple times. A.S. awoke during the fight to discover that he was not wearing pants and his anus hurt. He testified that he did not consent to any sexual contact with Davis. A.S. and Fyffe left the house, and Davis continued his assault on J.D.. Fyffe called the police. When they arrived, Fyffe and A.S. were outside the house, and the officers could hear an altercation inside the house. J.D.'s head was bleeding, and Davis admitted to the officers that he had struck J.D. first. A.S. was in Fyffe's car, and the officers described him as, "probably one of the most heavily intoxicated individuals I've ever encountered." Davis admitted to having intercourse with A.S. but claimed A.S. consented and was aware of what was happening.

The court found Davis guilty of sodomy in the first degree and the lesser-included offense of domestic assault in the fourth degree. Davis filed a motion for a new trial, again claiming his case should have been dismissed due to the violation of his right to a speedy trial. The court denied Davis's motion and sentenced him to ten years' imprisonment on the sodomy count and thirty days on the domestic assault count, to run consecutively. This appeal follows.

**Standard of Review**

In his sole point on appeal Davis argues that the charges against him should have been dismissed due to a violation of his right to a speedy trial. A defendant's right to a speedy trial comes from the Sixth Amendment to the United States Constitution, which applies to the states via the Fourteenth Amendment. *State ex rel. Garcia v. Goldman*, 316

4

S.W.3d 907, 910-911 (Mo. banc 2010). Article I, Section 18(a) of the Missouri Constitution also guarantees a "speedy public trial," and the two provisions "provide equivalent protection for a defendant's right to a speedy trial." *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 729 (Mo. banc 2007). The issue of whether the defendant's Sixth Amendment rights have been violated is a question of law, and therefore, our review is *de novo*. *State v. Fisher*, 509 S.W.3d 747, 751 (Mo. App. W.D. 2016). We defer to the trial court's findings of fact. *State v. Sisco*, 458 S.W.3d 304, 312 (Mo. banc 2015).

## Legal Analysis

It is the State's responsibility to provide a criminal defendant with a speedy trial. *State v. Richmond*, 611 S.W.2d 351, 355 (Mo. App. W.D. 1980). The determination of whether the State has satisfied its responsibility or whether it has violated the defendant's right to a speedy trial requires a balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The existence of any one of these four factors is neither necessary nor sufficient to find that the defendant's right to a speedy trial has been violated. *Id.* at 533. Rather, "courts must… engage in a difficult and sensitive balancing process." *Id.*

### *Length of Delay*

Any delay of at least eight months has been found to be "presumptively prejudicial" by Missouri courts. *McKee*, 240 S.W.3d at 729. An eight-month delay, therefore, is a triggering mechanism or a threshold inquiry, because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors[.]" *Barker*,

5

407 U.S. at 530. "The protections of the Sixth Amendment attach when there is a formal indictment or information or when actual restraints are imposed by arrest and holding to answer a criminal charge." *Fisher*, 509 S.W.3d at 751. In this case, Davis was first taken into custody on August 11, 2017. His trial began on July 2, 2018. Thus Davis's "delay" for speedy-trial purposes was just short of eleven months, or just under three months longer than what is presumptively prejudicial. Substantial delays have been found to be so long as to violate the defendants' constitutional rights, even without the defendant making a showing of actual prejudice. *See Doggett v. United States*, 505 U.S. 647(1992) (eight years); *Garcia*, 316 S.W.3d 907 (eight years); *Fisher*, 509 S.W.3d 747 (just under six years). A three-year delay, however, was found by the Missouri Supreme Court not to have been so excessive as to constitute an automatic violation of the defendant's right to a speedy trial and required the court to balance each of the factors including any particularized prejudice. *Sisco*, 458 S.W.3d 304. Therefore, we must consider Davis's eleven-month delay in light of the other factors.

*Reason for the Delay*

Various reasons for delay are attributed to either the defendant or to the State, and they weigh against the party that is responsible. *Barker*, 407 U.S. at 531. Different reasons for delay have different weights attached to them as well. For example,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

6

*Id.* But delays attributable to the defendant weigh heavily against the defendant. *State v Greenlee*, 327 S.W.3d 602, 612 (Mo. App. E.D. 2010).

In this case, other than very early, while Davis tried unsuccessfully to secure his pre-trial release, the delays were as follows. In September of 2017, Davis appeared with counsel, waived formal arraignment and requested a two-week continuance, which was extended until November 16, 2017 by agreement of the parties. On that date, a jury trial was scheduled for April 30, 2018. In April of 2018, before the scheduled trial date, the State requested a continuance which was granted over Davis's objection. The continuance was due to the assistant prosecuting attorney's impending deployment in the Army Reserves and to allow a new assistant prosecuting attorney to take over the case. This is the first continuance to which Davis objected, and, although it must be weighed against the State, it is not weighted heavily, as the delay was not in order to hamper Davis's defense, but was necessitated by the military deployment and a new assistant prosecuting attorney being assigned to take over the case. The trial was continued by the court until June 25, 2018.

When APA Seufert took over the case on April 17, he requested Davis's counsel consent to a change of judge, even though the time to request a change of judge as of right under Rule 32.07 had expired. When Davis's counsel refused to consent, APA Seufert filed a voluntarily dismissal of Davis's case without prejudice and refiled the case the same day, recharging Davis by grand jury indictment, on April 20, 2018. On April 24, 2018, APA Seufert filed a timely motion for change of judge as of right in the newly filed case. A new

7

judge was assigned and set the case for trial for July 2. The delay from June 25 to July 2, although brief, is weighted heavily against the State.

APA Seufert acknowledged that the State caused the delay in order to hamper Davis's defense in that the State believed the judge originally assigned to the case would be less favorable to the State's position, and the State desired a change of judge to obtain a judge that it believed would be more favorable to it. The State then dismissed the case and refiled it on the same day for the sole purpose of circumventing Missouri's Rules of Criminal Procedure, to obtain a change of judge beyond the time allowed. APA Seufert acknowledged that the prior ruling the State considered adverse in the other matter occurred before the charges were even filed against Davis, that the prior assistant prosecutor who had been assigned to this case was also trial counsel in the case the State had received what they perceived as an adverse ruling by the trial judge, and APA Seufert provided no explanation as to why the State did not timely file a motion for change of judge in the original case against Davis. APA Seufert testified that while he had never previously dismissed a case and refiled for purposes of obtaining an untimely change of judge, "our office has done so on multiple occasions and we have never had any defense attorney object or question the propriety of that procedure." He then cited to section 56.087 RSMo., which grants the State complete discretion to dismiss and refile a case at any time before jeopardy attaches. But delays for tactical advantage are weighed heavily against the State. In fact, if the delay is pre-arrest or indictment, whether the delay is for tactical advantage is one of only two considerations, along with prejudice to the defendant. *State v. Morris*, 285 S.W.3d 407, 412 (Mo. App. E.D. 2009).

8

We do not condone APA Seufert's manipulation of the procedures to circumvent the Supreme Court Rules, however, we do recognize that our Supreme Court has indicated that while such a practice is "concerning" and any delay caused is weighed heavily against the state, a 70-day delay so caused was found not to have violated a defendant's Sixth Amendment rights to a speedy trial. *Sisco*, 458 S.W.3d 315-16. There, the state, after receiving an adverse pre-trial evidentiary ruling, voluntarily dismissed Sisco's case and refiled it to obtain a different trial judge, causing delay. *Id.* The Missouri Supreme Court, however, stressed that the State has broad authority to dismiss and refile cases pre-trial under the statute, even after unfavorable rulings, and the Court ultimately concluded that, even weighing this delay heavily against the state, the balance of the four factors as a whole did not warrant dismissal of Sisco's charges for a speedy-trial violation. *Id*. at 315, 319.

While this factor weighs heavily against the State, the resulting delay in the trial was only seven days, from June 25, 2018 until July 2, 2018.

*Assertion of Right to Speedy Trial*

The third *Barker* factor is the defendant's timely assertion of his right to a speedy trial. It matters when and how persistently the defendant asserts his right. *Fisher*, 509 S.W.3d at 754. "[C]ourts will weigh the timeliness of the assertion and the frequency and force of a defendant's objections" to delays in trial. *Sisco*, 458 S.W.3d at 316. In this case, Davis first requested a speedy trial after his first trial setting of April 30, 2018, had been continued over his objection, and the newly assigned prosecuting attorney informed Davis's counsel that he wanted to obtain a change of judge. When the case was dismissed and refiled, Davis's counsel again requested a speedy trial within a matter of days. Davis

9

also moved to dismiss his case for the alleged speedy trial violation on June 26, 2018, before the July 2, 2018, trial setting. This factor favors Davis.

*Prejudice to the Defendant*

The last of the four factors the court considers is the prejudice to the defendant caused by the delay. As previously mentioned, if the delay is long and all or mostly attributable to the State, the defendant need not establish particularized prejudice in order to establish a violation warranting dismissal. *See Doggett*, 505 U.S. 647; *Garcia*, 316 S.W.3d 907. However, the prejudice to the defendant created by the delay can be great, and may include: prevention of oppressive pretrial incarceration; minimization of anxiety and concern of the accused; and the possibility that the defense will be impaired from loss of evidence or witnesses. *Barker*, 407 U.S. at 532; *Garcia*, 316 S.W.3d at 912.

Davis was incarcerated from August 11, 2017, up until his trial on July 2, 2018. And while undoubtedly "anxiety and concern exist in every criminal case . . . 'that alone does not establish prejudice where, as here, the defendant [does not show] that the delay weighed particularly heavily on him in [the] specific instanc[e].'" *State v. Woodworth*, 941 S.W.2d 679, 694 (Mo. App. W.D. 1997) (quoting *State v. Ingleright*, 787 S.W.2d 826, 832 (Mo. App. S.D. 1990)). Davis did not articulate any unusual or particular anxiety due to his incarceration leading up to his trial. Nor does Davis allege any impairment in his defense caused from the delay of his trial setting. No evidence or witnesses had become unavailable in the roughly eleven months between the time of his arrest and the time of his trial.

Davis argues that he did in fact establish particularized prejudice in this case because the delay caused by the State's *nolle prosequi* and refiling was used by the State for a specific tactical advantage. The State readily acknowledged that the specific reason it dismissed the case and refiled it was to obtain a tactical advantage, i.e., a judge that it perceived would be more favorable to the State and less favorable to Davis under the particular facts of this case. It is unclear how the State can now take the position that this delay did not impair his defense and therefore was not prejudicial to Davis. The State's own position is that Davis's defense was impaired by its tactical use of the dismissal and refiling of the charges, supporting a finding of the particularized prejudice that is at issue in this analysis. However, "[c]laims of prejudice must be actual or apparent on the record, or by reasonable inference, while speculative or possible prejudice is not sufficient." *State v. Ferdinand*, 371 S.W.3d 844, 854-55 (Mo. App. W.D. 2012) (abrogated on other grounds by *Sisco*, 458 S.W.3d at 312-13).[4] "The burden to present evidence of actual prejudice is on the defendant and the failure to do so weighs heavily in favor of the State." *Id.* at 855.

---

[4] The parties disagree as to who has the burden of showing whether the defendant suffered actual prejudice. Indeed, the relevant case law is somewhat conflicting. The United States Supreme Court, in *Doggett v. U.S.*, 505 U.S. 647, 656(1992), states that if the government uses "reasonable diligence," the defendant's speedy-trial claim should fail "so long as [the defendant] could not show specific prejudice to his defense." An extraordinarily long delay due to the government's negligence, however, did not require a showing of particularized prejudice by the defendant. *Id.* at 657-58. The Missouri Supreme Court, in *State ex rel. Garcia v. Goldman*¸ 316 S.W.3d 907, 913 (Mo. banc 2015), affirmatively placed the burden of showing a *lack* of prejudice on the State. ("In this case, the state has not proven that the delay 'affirmatively…left [Garcia's] ability to defend himself unimpaired' as required to rebut the presumption of prejudice.") (alterations in original). That same year, however, the Missouri Supreme Court found against a defendant when *he* did not show that his "defense was impaired significantly by the delay. He does not identify any witnesses who disappeared or otherwise became unavailable because of the delay, nor does he allege that any evidence was lost." *State v. Sisco*, 458 S.W.3d 304, 317 (Mo. banc 2015). The Court noted that the delay of the defendant's trial was "presumptively prejudicial" but then stated that "[d]etermining a delay is long enough to trigger consideration of other factors does not negate the need for this Court to consider actual prejudice." *Id.* at 318. It appears that the burden of production with respect to showing whether actual, particularized prejudice exists depends upon where the balance lies after the court has considered the other three *Barker* factors. Irrespective of which party bore the burden in this matter the outcome would not change.

11

While arguing that he suffered particularized prejudice, the only evidence of prejudice Davis cites is APA Seufert's opinion that the original trial judge was less favorable to the State's case. In response to Davis's argument of particularized prejudice, the State cites to *Sisco*, noting that in that case the Supreme Court found a delay of 70 days caused by a *nolle prosequi* and refiling of the charges was generally, without more, insufficient to establish prejudice. However, in *Sisco* the defendant failed to make *any* argument that he suffered particularized prejudice caused by the State's successful attempt to obtain a tactical advantage by the use of its dismissal and refiling of the charges and the Court did not address an argument not raised before it. *Sisco*, 458 S.W.3d at 318-19.

Considering all four of the *Barker* factors together, we cannot conclude that Davis's rights under the United States and Missouri Constitutions to a speedy trial were violated. His trial took place within a year of his arrest. His trial was delayed less than two months from its original setting due to the assistant prosecuting attorney's deployment in the military. And while the second assistant prosecuting attorney's delay caused by his dismissing and refiling the charges against Davis weighs heavily against the State, that delay was only a matter of days. Davis promptly and persistently asserted his rights to a speedy trial, but not until the first trial setting was continued. Finally, while Davis established prejudice caused by the delay, the delay was only a matter of days. For these reasons, the trial court properly denied Davis's motion to dismiss.

_____
Gary D. Witt, Judge

All concur