

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED112002 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Saint Louis County |
| v. | ) | Case No. 23SL-CR01328-01 |
| | ) | |
| LONNELL A. LEWIS-JONES, | ) | Honorable Kristine A. Kerr |
| | ) | |
| Appellant. | ) | Filed: October 1, 2024 |

## Introduction

Lonnell A. Lewis-Jones (Lewis-Jones) appeals from his conviction for two counts of second-degree murder, two counts of second-degree assault, and four counts of armed criminal action. On appeal, he argues the trial court violated his constitutional right to a speedy trial by denying his motion to dismiss following a delay of 63 months before he was brought to trial. We affirm.

## Background

The State charged Lewis-Jones with two counts of the class A felony of murder in the first degree, two counts of the class B felony of assault in the first degree, and four associated counts of armed criminal action (ACA). The charges stemmed from an incident on February 22, 2018 in which Lewis-Jones and his brother (Co-defendant) shot repeatedly at a vehicle in which B.S., C.P., and W.D. were driving, causing the death of W.D. and

F.L., a cement truck driver working nearby. Lewis-Jones does not challenge the sufficiency of the evidence supporting his convictions, and we discuss the facts only as necessary to our analysis.

The State originally charged Lewis-Jones stemming from the events that occurred on February 22, 2018 in case number 18SL-CR01394-01. Following multiple continuances, trial was scheduled to begin on June 6, 2022. On May 17, 2022, the State requested a continuance on the grounds that the lead prosecutor was unable to attend trial for medical reasons. Lewis-Jones objected to the continuance and announced ready for trial, and the trial court denied the State's request. Accordingly, on June 2, 2022, four days before trial was scheduled to begin, the State filed a *nolle prosequi* on all charges in case number 18SL-CR01394-01 and immediately filed a new complaint alleging identical charges, which was assigned case number 22SL-CR04181-01.

On October 3, 2022, Lewis-Jones moved to dismiss the charges against him, asserting a violation of his right to a speedy trial. The trial court denied his motion and set his trial for February 27, 2023. In December of 2022, B.S. died. On February 24, 2023, Lewis-Jones filed a request for a speedy trial. On February 27, 2023, the day of trial, the State again filed a *nolle prosequi* on all charges in case number 22SL-CR04181-01.

That same day, February 27, 2023, the State filed a third complaint re-alleging the same charges stemming from the events of February 22, 2018, which was assigned case number 23SL-CR01328-01, the current case. On March 28, 2023, Lewis-Jones filed another request for a speedy trial. On April 13, 2023, he filed a motion to dismiss alleging a violation of his right to a speedy trial, citing the five-year delay and the intervening death

2

of B.S., whom he asserted he would have called as a witness for the defense because initially she did not identify Lewis-Jones as one of the shooters.

The State responded that a few days before the start of the scheduled February 27, 2023 trial, the State discovered B.S. had died on December 29, 2022. Although the State summoned C.P. to appear at trial as a witness, C.P. avoided the State's attempts to contact her. On the morning of trial, the State could not locate C.P., and it filed a *nolle prosequi* on all charges. However, later that morning, C.P. appeared at the office of the prosecuting attorney with a parent, who was concerned about C.P.'s safety but provided assurance that C.P would be available for trial. The State then refiled the charges. The State further explained that, during the 2021 trial of Co-defendant, State's witnesses B.S. and C.P. had defied their subpoenas and failed to appear for trial despite earlier cooperation, after which the State discovered that they had received telephone calls from someone[1] at the St. Louis County Justice Center warning them not to appear for trial. After a hearing, the trial court denied Lewis-Jones's motion to dismiss for a speedy-trial violation. Trial proceeded on June 12, 2023, during which C.P. testified, positively identifying Lewis-Jones as one of the shooters.

After the trial, the jury convicted Lewis-Jones of two counts of second-degree murder, two counts of second-degree assault, and four counts of ACA. On the two counts of second-degree murder, Counts 1 and 3, the trial court sentenced Lewis-Jones to life in the Missouri Department of Corrections, concurrent to each other. On the two counts of

---

[1] Lewis-Jones subsequently filed a motion *in limine*, a copy of which was not included in the record on appeal, to prevent the State from playing jail call recordings from the St. Louis County Justice Center to the jury that the State would argue were attributable to Lewis-Jones. After an evidentiary hearing, the trial court denied the motion *in limine*, ruling that the question of whether it was Lewis-Jones's voice on the jail call recordings was one for the jury. However, it does not appear that the State presented this evidence to the jury at trial.

second-degree assault, Counts 5 and 7, the trial court sentenced Lewis-Jones to seven years' imprisonment, concurrent to each other, but consecutive to the sentences on Counts 1 and 3. On the four counts of ACA, the trial court sentenced Lewis-Jones to ten years' imprisonment, concurrent to each other, but consecutive to the sentences on Counts 5 and 7, for a total sentence of life plus seventeen years. This appeal follows.

Discussion

In his sole point on appeal, Lewis-Jones argues the trial court erred in denying his motion to dismiss and in entering judgment and sentence against him in violation of his due process rights, in that he asserted his right to a speedy trial but the State did not bring him to trial for more than 63 months, which was presumptively prejudicial and caused his defense actual prejudice. We disagree.

The Sixth Amendment of the United States Constitution and Article I, Section 18(a) of the Missouri Constitution guarantee a defendant a right to a speedy trial. State v. Sisco, 458 S.W.3d 304, 313 (Mo. banc 2015). We review *de novo* whether a defendant's speedy-trial rights were violated. Id. at 312-13. In determining whether a defendant was deprived of the right to a speedy trial, we balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. Id. (citing Barker v. Wingo, 407 U.S. 514, 515 (1972)). No single factor is either necessary or sufficient on its own to find a deprivation of the right; but rather, all the factors must be considered together. Edwards v. State, 636 S.W.3d 606, 611 (Mo. App. E.D. 2021).

*1. Length of Delay*

The first element, the length of the delay, is "a triggering mechanism" and "'[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors.'" Sisco, 458 S.W.3d at 313 (quoting Barker, 407 U.S. at 530). In Missouri, a delay of eight months or longer is generally deemed presumptively prejudicial. Id. The delay in bringing a defendant to trial is measured from the time he or she is charged and arrested, not from the time the defendant first asserts his or her right to a speedy trial. Edwards, 636 S.W.3d at 611; see also Sisco, 458 S.W.3d at 313. The parties agree that the length of more than five years between Lewis-Jones's arrest and trial was presumptively prejudicial. Accordingly, we will consider the remaining factors.

### 2. *Reason for Delay*

We next consider the reason for delay, and we assign different weights to different reasons. Sisco, 458 S.W.3d at 313. Any deliberate attempt by the State to delay trial in order to hamper the defense will weigh heavily against the State. Id. at 314. Neutral reasons for delay by the State, such as overcrowded dockets or negligence, also weigh against the State but not as heavily. Id. Certain circumstances, such as a missing witness justify a delay and will not count against the State. Id. Delays attributed to the defense weigh against the defendant. Id.

Here, the defense presented no evidence and the trial court made no findings that the delays were intended to disadvantage Lewis-Jones. He was arrested in May of 2018, and his trial was originally scheduled for November 4, 2019. The trial was continued to March 30, 2020 for unknown reasons; however, it appears both parties acquiesced to the continuance. When a defendant acquiesces in the delay, it does not count against the State. See State v. Vickers, 560 S.W.3d 3, 16 (Mo. App. W.D. 2018). On March 16, 2020, the

5

trial court on its own motion continued the trial to November 16, 2020, due to the onset of the COVID pandemic, which this Court has previously found to be a justifiable delay, counted against neither party. State v. Oliver, 655 S.W.3d 407, 418 (Mo. App. E.D. 2022). The trial court continued the trial date multiple times from November 16, 2020 to October, 25, 2021, due to the continuation of the COVID pandemic. Counsel for Lewis-Jones notified the court he might need a continuance from October 25, 2021 until June 6, 2022, due to a conflicting trial, and, accordingly, the trial court continued the trial date to June 6, 2022. This delay counts against the defense. See Sisco, 458 S.W.3d at 313.

On May 17, 2022, a month before trial, the State requested a continuance due to the prosecutor's upcoming medical leave, but the trial court denied the continuance after Lewis-Jones objected. Accordingly, on June 2, 2022, the State filed a *nolle prosequi* and then refiled the charges. The State has broad discretion to dismiss and refile charges, including following an unfavorable ruling, and doing so does not, without more, raise an inference of bad faith. See State v. Gwin, 684 S.W.3d. 762, 769 (Mo. App. W.D. 2024). Nothing in the record indicates that the State requested the continuance for anything other than medical reasons, and, moreover, at the time the State filed the request, Lewis-Jones had not yet asserted his right to a speedy trial but had acquiesced in all continuances. A delay due to the prosecutor's health weighs only lightly against the State because the reason is neutral. See Sisco, 458 S.W.3d at 314 & n.10.

After the State refiled charges on June 2, 2022, the trial was scheduled for February 27, 2023. However, on February 27, 2023, the State's sole primary eye-witness, C.P., did not appear for trial, despite having been subpoenaed. The State had a history of C.P. not appearing for trial, in that, in Co-defendant's trial, neither C.P. nor B.S. appeared in

6

response to their subpoenas, and it was later revealed that they had received phone calls from jail advising them not to appear for trial. Without its primary witness, the State filed a second *nolle prosequi*. However, C.P. appeared unexpectedly at the prosecutor's office later that morning with a parent, who expressed concern for C.P.'s safety but asserted they would make sure she would be present at trial. On this assurance, the State again refiled all charges against Lewis-Jones. This delay was due to C.P. defying her subpoena and failing to appear for court. Because a missing witness justifies a delay, it is not counted against the State. See Sisco, 458 S.W.3d at 313; Hollings v. State, 662 S.W.3d 821, 833 (Mo. App. E.D. 2023).

Lewis-Jones argues on appeal that this Court should infer bad faith from the State twice filing *nolle prosequi* on or near the trial date, but the record here does not support that inference. While this Court has general concerns regarding the State's use of the *nolle prosequi* in a way that delays trial proceedings, the circumstances here clearly demonstrates neutral or justified reasons for the State's decisions to file *nolle prosequi* of the charges against Lewis-Jones and the resulting delay. The first *nolle prosequi* was due to the prosecutor's medical leave, which counts only lightly against the State. For the second *nolle prosequi*, the record shows both a threat to witnesses in order to intimidate them not to appear for trial and that C.P.'s continuing concerns for her safety was a reason she did not initially appear for Lewis-Jones's trial. Under these circumstances, certainly the delay from the second *nolle prosequi* does not count against the State. Where the record shows a threat to a witness, the defense should not and will not benefit from any delay caused by that threat.

This factor weighs only lightly against the State.

### 3. *Assertion of the Right*

We next consider the third factor: whether and how the defendant asserted his right to a speedy trial. The defendant is not required to assert his or her right by any specific time in order to preserve the right; rather, we consider "the timeliness of the assertion and the frequency and force of a defendant's objections." Sisco, 458 S.W.3d at 316.

Here, the record shows that Lewis-Jones was initially charged and arrested on March 2, 2018, but he did not assert his right to a speedy trial until October 3, 2022, four years and seven months later, when he filed a motion to dismiss based on a violation of this right. Moreover, Lewis-Jones had not filed a request for a speedy trial before filing the motion to dismiss on that basis, which contradicted his claim. See Hollings, 662 S.W.3d at 833 (finding that when movant did not assert speedy trial claim before motion to dismiss on that basis, his actions contradicted his claim).

Although Lewis-Jones cites to Edwards v. State to argue that his objection on May 24, 2022 to the State's request for a continuance was the equivalent of asserting his right to a speedy trial on that date, we disagree. Edwards does not support his argument. Rather, the language in Edwards stated, "Movant first asserted his right to a speedy trial on November 17, 2014, when he objected to the State's motion for continuance." 636 S.W.3d at 611. We interpret this language to mean that Edwards in fact asserted his right to a speedy trial as the basis for his objection, not that simply by objecting to a continuance he *sub silentio* asserted his right. See id. A defendant must actively assert his or her right to a speedy trial and we will not infer an implied request that was not in fact made.

A late assertion of the right to a speedy trial, as here, can weigh against the defendant. See State v. Scherrer, 673 S.W.3d 899, 910 (Mo. App. E.D. 2023) (reassertion

8

of speedy-trial right nearly five years after initial charges were filed weighed against defendant); see also Vickers, 560 S.W.3d at 17 ("[a]lthough a defendant has no duty to bring himself to trial, … failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial") (citation omitted).  When a defendant acquiesces to delays for a long period of time without asserting his or her speedy-trial right and then asserts the right after a trial is scheduled, or when the defendant seeks to dismiss charges for a speedy-violation before asserting the right, it appears that the defendant does not genuinely wish for a speedy trial but, rather, hopes to take advantage of the speedy-trial rules to obtain a dismissal.  Vickers, 560 S.W.3d at 17.  Under these circumstances, the assertion-of-right factor will weigh against the defendant.

Here, Lewis-Jones did not raise the issue of his right to a speedy trial until his October 2022 motion to dismiss, more than four and a half years after he was charged, and he did not file a request for a speedy trial until February 24, 2023, which was months after the trial court had already set the case for trial and three days before trial was scheduled to start.  In light of both the long delay before asserting his right and his contradictory actions in filing a motion to dismiss before requesting a speedy trial and in formally requesting a speedy trial only after trial had already been scheduled, it is clear Lewis-Jones did not wish for a speedy trial, but, rather, wished for his case to be dismissed.  See id.

This factor weighs against Lewis-Jones and in favor of the State.

### 4. *Prejudice Resulting from the Delay*

The last factor to consider is whether the defendant was prejudiced by the delay. State ex rel. Garcia v. Goldman, 316 S.W.3d 907, 912 (Mo. banc 2010).  Courts look at three considerations in determining whether the delay has resulted in prejudice: (1)

preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. Id. The third consideration is the most important. Id. Lewis-Jones asserts prejudice only from the first and third considerations.

Regarding the oppressive-incarceration factor, Lewis-Jones argues that the five-plus-year length of his incarceration between his arrest and trial, standing alone, infringed his right to a speedy trial. As the length of the delay increases, the likelihood of prejudice from the delay alone "intensifies over time." Sisco, 458 S.W.3d at 318. A court is entitled to find a speedy-trial violation even in the absence of actual, particularized prejudice to defendant because excessive delay can "compromise[] the reliability of a trial in ways that neither party can prove." Garcia, 316 S.W.3d at 913. However, just as a court is entitled to find a speedy-trial violation from the length of the delay, it is not required to do so. See, e.g., Scherrer, 673 S.W.3d at 909, 912 (eight-year delay between arrest and trial did not violate defendant's right to a speedy trial when other factors did not indicate prejudice from delay). No one factor is either necessary or sufficient to find a deprivation of the right to a speedy trial, and courts must balance all the factors, including the presence or absence of actual prejudice resulting from a delay. Edwards, 636 S.W.3d at 611; see also Sisco, 458 S.W.3d at 318 (long length of delay "does not negate the need for this Court to consider actual prejudice").

Lewis-Jones's incarceration of over five years pending trial, while concerning, was not so oppressive here as to cause prejudice. Courts consider the defendant's actions in causing or acquiescing to the delay. Sisco, 458 S.W.3d at 318 ("the presumption of prejudice in this case was attenuated by Mr. Sisco's acquiescence"). Here, Lewis-Jones

10

acquiesced to the delay from March 2, 2018 until May 24, 2022 when he made his first objection to a continuance. He did not assert his right to a speedy trial until October 3, 2022, more than four and half years after his arrest. While his trial did not proceed until eight months after he asserted his right to a speedy trial, the portion of this delay between February 27, 2023 and June 12, 2023 was justified by a missing witness who had previously received threats not to appear to testify.

Moreover, we note that Lewis-Jones was ultimately sentenced to life in prison plus seventeen years following his convictions for two counts of second-degree murder, two counts of second-degree assault, and four counts of ACA, and therefore he cannot claim to have served additional, unwarranted jailtime due to any delay in bringing him to trial. See State v. Greenlee, 327 S.W.3d 602, 613 (Mo. App. E.D. 2010) ("[w]hile Greenlee did spend an extended period of time incarcerated before his trial, we note that he was sentenced to life imprisonment as a result of his conviction. Thus, Greenlee has no claim that he has served additional jail time because of any delay in bringing him to trial.").

Last, regarding the third and most important concern, Lewis-Jones asserts actual prejudice, arguing that his defense was impaired by the intervening death of eyewitness B.S. while his case was pending. The burden to present evidence that the defense was impaired by the delay rests with the defendant. See Sisco, 458 S.W.3d at 317. The impairment to the defense must be actual and apparent, or at least inferable, from the record, rather than merely speculative.[2] State v. Smith, 491 S.W.3d 286, 308 (Mo. App.

---

[2] We note that Lewis-Jones appears to argue that State ex rel. Garcia v. Goldman stands for the proposition that, if a witness disappears, prejudice necessarily follows. See 316 S.W.3d 907, 912 (Mo. banc 2010) ("[i]f witnesses die or disappear during a delay, the prejudice is obvious"). However, Missouri courts have not interpreted Garcia this way. Rather, Missouri courts determine whether prejudice resulted from a missing witness on a case-by-case basis, placing great weight on whether the asserted prejudice is speculative or actual. See, e.g., State v. Heidbrink, 670 S.W.3d 114, 130 (Mo. App. E.D. 2023); State v. Greenlee, 327 S.W.3d 602, 613 (Mo. App. E.D. 2010).

11

E.D. 2016). When a defendant can only speculate as to the impact of a missing witness on the defense, we will not find prejudice. State v. Heidbrink, 670 S.W.3d 114, 130 (Mo. App. E.D. 2023).

Here, the State endorsed B.S. as a witness because she saw the shooting and, during her pretrial deposition, she had identified Lewis-Jones as one of the two people who shot at her car, killing W.D. and F.L. Nevertheless, Lewis-Jones argues that evidence of B.S.'s initial failure to identify Lewis-Jones as one of the shooters when police showed her his photograph on the day of the shooting would have been a valuable source of impeachment against her later positive identification. Lewis-Jones further asserts that, even if the State had not called B.S. as a witness, he would have done so. We note this would have meant calling an eyewitness who would identify him as a shooter, which is very unfavorable testimony, simply for the purpose of then attempting to impeach that unfavorable testimony. Logically, it is difficult to see how presenting the testimony of an eyewitness to identify him as the shooter would have helped Lewis-Jones to prove his innocence, even if that identification testimony could have been rebutted by impeachment evidence. The record indicates B.S.'s testimony would have done little to help his defense. If anything, it seems more likely from the record that Lewis-Jones benefited from B.S.'s absence from trial, because, without B.S.'s testimony, only C.P. was able to identify Lewis-Jones as the shooter. Under the facts of this case, Lewis-Jones has not met his burden of proving actual rather than speculative prejudice, as it related to the impairment of his defense.

This factor weighs against Lewis-Jones and in favor of the State.

In summary, the first factor weighs in favor of Lewis-Jones because the length of the delay in this case was presumptively prejudicial. However, the reasons for the delays

12

in bringing him to trial were neutral or justified, and therefore the second factor weighs only lightly against the State. The third factor weighs against Lewis-Jones because he did not assert his right to a speedy trial until over four and a half years had passed, and he asserted it in a manner that indicated his true goal was not a speedy trial, but a dismissal. Regarding the fourth and most important factor, prejudice, any prejudice suffered by Lewis-Jones was due only to the length of his pretrial incarceration, and the delay did not impair his defense. After balancing all of these factors, we find the presumption of prejudice in this case is outweighed, and Lewis-Jones's constitutional right to a speedy trial was not violated. See Sisco, 458 S.W.3d at 319 (similarly holding). The trial court did not err in denying Lewis-Jones's motion to dismiss for a violation of his right to a speedy trial.

Point denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Gary M. Gaertner, Jr., J.

Philip M. Hess, P.J., and
Renee D. Hardin-Tammons, J., concur.

13